NEW YORK LIFE INSURANCE COMPANY *v.* DANDRIDGE.

4-6879                                                    166 S. W. 2d 1030

Opinion delivered December 7, 1942.

*Ferdinand H. Pease* and *Rose, Loughborough, Dobyns & House,* for appellant.

*Arnett & Shaw,* for appellee.

HUMPHREYS, J. This suit was brought by appellee in the circuit court of Logan county against appellant to recover $25 per month, total disability benefits, under a policy of insurance issued to her by appellant on October 18, 1927, alleging that she became totally disabled within the meaning of the disability clause in the policy on and after the month of October, 1940, and also alleging that under the terms of the policy she was entitled to recover the premium she paid appellant after she became disabled, a statutory penalty for failure to pay her, and a reasonable attorney's fee.

Appellant filed an answer denying liability under the disability clause in the policy.

On January 5, 1942, the court heard the case, sitting as a jury by agreement of the parties, upon the pleadings, depositions and testimony of witnesses in open court and took the case under advisement for consideration and on briefs.

On March 7, 1942, the court rendered judgment against appellant in accordance with his findings, which are as follows: "The plaintiff is entitled to judgment against the defendant for the sum of $350 for monthly indemnity for total disability from November, 1940, to December, 1941; that the plaintiff is entitled to judgment for $101, being the amount of premium paid during the period of disability; that the plaintiff is entitled to recover a penalty of $54.12, together with a reasonable attorney's fee, which is fixed by the court in the sum of $400."

Appellant excepted to the findings and judgment of the court, filed a motion for a new trial, which was overruled over its exceptions, prayed an appeal to the Supreme Court, which was granted, and was allowed 120 days in which to prepare, file and present its bill of exceptions.

The bill of exceptions contains the policy of insurance with stipulations that all premiums on same had been paid from the date of the policy to the date of the trial and the testimony of appellee and of two physicians testifying in her behalf.

Appellant introduced no testimony.

The sole questions involved on this appeal on the undisputed facts are: first, whether appellee was totally disabled on account of disease within the meaning of the total disability clause contained in the policy, and, second, whether the fee of $400 allowed as attorney's fee was unreasonable.

Total and permanent disability is defined in the policy of insurance as follows: "Disability shall be considered total whenever the insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, from following any occupation, or from engaging in any business for remuneration or profit, provided such disability occurred after the insurance under this policy took effect and before the anniversary of the policy on which the insured's age at nearest birthday is sixty."

The record reflects that appellee began teaching in 1923, after graduating, and taught continuously until 1929, when she married Mr. Dandridge. She then quit teaching until 1932 when her husband became ill and could not support her. She then had to return to teaching, and taught in Mississippi and at Paris, Arkansas, through the year 1935, at which time she had to give up her profession of teaching regularly on account of deafness, and thereafter until 1940 she taught occasionally as a substitute, but at that time she became so deaf she could not teach even as a substitute. She had been treated by physicians for deafness without benefit. During the period from 1935 until November, 1940, in addition to trying to teach as a substitute she attempted to assist her husband in the cleaning and pressing shop which he had established in Paris. She had to give up this work also on account of deafness because she could not take telephone orders and could not converse with patrons of the cleaning and pressing shop. On account of her deafness she became nervous and afflicted with insomnia and indigestion so that she could not perform all of the ordinary duties of housekeeping for herself and husband. She was confined to her bed a considerable part of the

time. She received no remuneration for the assistance she attempted to give her husband in the cleaning and pressing business and none for performing such household duties as she was able to perform.

Dr. Louis M. Henry, an eye, ear, nose and throat specialist in Ft. Smith, Arkansas, after qualifying as an expert or specialist, testified in substance as follows:

"On July 9, 1941, I examined Mrs. Dandridge with a view to determining her hearing loss. Each ear was examined separately for bone and air conduction. I used standard forks of different pitch. The results were compared with normal hearing under the same conditions. This is a standard and approved method used by ear specialists.

"I found a very definite hearing loss for both bone and air conduction in each ear. I found retracted ear drums that are characteristic of chronic tubal catarrh. I also found an indication of nerve deafness. Her hearing loss is such that I find that she is economically deaf. In my opinion, she is incapacitated from teaching school. Her condition is such that she is totally incapacitated from performing any work, following any occupation, or from engaging in any business for remuneration or profit in which work or business her hearing would be a factor. I should say her deafness had existed possibly four or five years prior to my examination. In my opinion, her condition is permanent."

Dr. Charles T. Chamberlain, who is the regular physician of appelee, testified as follows:

"I am a physician. I hold a medical degree. I have been connected with the Holt-Krock Clinic of Ft. Smith since 1935, in the capacity of internist.

"Mrs. Dandridge came to the Clinic in October, 1938, for treatment. She was complaining of progressive loss of hearing, complicated by an annoying ringing in her ears, nervousness, and indigestion. Since October, 1938, I have served in the capacity of Mrs. Dandridge's family physician, and have seen her at intervals of about once every month or six weeks.

"Repeated observations of Mrs. Dandridge during the interval from October, 1940, to the present time have failed to reveal any evidence of serious organic diseases other than the ear affection, which has led to progressive loss of hearing. This disability, in my opinion, contributed largely to the intensification of her nervousness, which, in turn, has been the cause of some of her other symptoms. In October, 1940, in my opinion, she was incapacitated from pursuing any gainful occupation. I conclude that the cause of her defect is catarrh of the Eustachian tube, complicated by auditory nerve involvement. She is economically deaf and incapacitated from pursuing any gainful occupation. The condition existed prior to October, 1940. The nervous and emotional instability manifests itself in terms of indigestion, insomnia and loss of appetite. The cause of the nervousness is secondary to the emotional strain to which the patient has been subjected as a result of her hearing defect. In my opinion, she is wholly incapacitated from performing any work, following any occupation, or engaging in any business for remuneration or profit. I consider the condition permanent."

It is quite certain from this testimony that on account of appellee's practically total deafness resulting in nervousness, insomnia and indigestion, she is disabled from doing any work, from following any occupation or engaging in any business for remuneration or profit; that she cannot follow the profession of teaching, for which she was peculiarly qualified, and cannot engage in any other business or work for remuneration or profit. She tried to work in the cleaning and pressing establishment operated by her husband, but completely failed to successfully perform the duties incident to that business. On account of her deafness, nervousness, insomnia and indigestion, it is quite apparent that she could not secure employment as a housekeeper for remuneration or profit. No one would want to employ in normal times a housekeeper who was so deaf she could not hear over a telephone or understand what she might be told to do. We think there is ample evidence of a substantial nature in

this record to sustain the findings of the court, sitting as a jury, to the effect that appellee is totally disabled from performing any work, from following any occupation or from engaging in any business for remuneration or profit. It is true that she is not helpless, but our court has said in many cases in construing disability clauses such as is contained in this policy that the insured does not have to be helpless in order to recover disability benefits.

In the case of *The Equitable Life Assurance Society* v. *Barton,* 192 Ark. 984, 96 S. W. 2d 480, this court said: "To be totally disabled within the meaning of an insurance policy insuring against such conditions, it is not necessary that the insured should be absolutely helpless; he is totally disabled when he is unable to perform the substantial and material acts of his own business or occupation in the usual and customary way."

This court said in the case of *New York Life Insurance Co.* v. *Weeks,* 201 Ark. 1160, 148 S. W. 2d 330, that: "The rule as to what constitutes total disability is well settled in this state, and in the case of the *Missouri State Life Ins. Co.* v. *Snow,* 185 Ark. 335, 47 S. W. 2d 600, the rule was stated as follows: 'Total disability does not mean absolute physical disability on the part of the insured to transact any kind of business pertaining to his occupation. Total disability exists, although the insured is able to perform occasional acts, if he is unable to do any substantial portion of the work connected with his occupation. It is sufficient to prove that the injury wholly disabled him from doing of all the substantial and material acts necessary to be done in the prosecution of his business. . . '."

It was also said by this court in the same case: "Of course, such a provision in a policy does not require that the insured shall be absolutely helpless or insane, but there must be such disability as renders him unable to perform all the substantial and material acts in the prosecution of a gainful occupation."

Certainly it can be said under the facts in this case that on account of appellee's deafness, insomnia, indi-

gestion and nervousness she cannot follow her profession of teaching at all, and she cannot do all of the substantial duties of housekeeping. We are convinced that under the facts in this case appellee could not perform all the substantial duties incident to any kind of work or employment she might undertake. In other words, we are convinced under the facts in this case that appellee's earning capacity is totally and permanently destroyed. This is the real test under a fair and reasonable construction of the total and permanent disability clause in the policy.

Appellant contends that the attorney's fee of $400 is unreasonable and excessive. This court said in the case of *Pacific Mutual Life Insurance Company* v. *Jordan,* 190 Ark. 941, 82 S. W. 2d 250, (quoting Syllabus 6) that: "In an action on a policy of disability insurance, to recover past-due installments of disability benefits, services of attorneys in establishing disability, as affecting future rights and liabilities under the contract, involved a substantial right which should be considered in fixing their fees."

It is true the recovery in this case was not very large, but the effect of the decision herein will establish total and permanent disability for a long period of time, which will be a very valuable asset for appellee when appellant pays her the total amount to which she will be entitled under the disability clause. The successful maintenance of the suit required on the part of appellee's attorneys an exhaustive search of the decisions of this and other courts of last resort. The fee allowed was not excessive, but is a fair and reasonable fee under all the circumstances surrounding the case.

No error appearing, the judgment is affirmed.