ALEXANDER *v.* MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION.

5-2097                                                      336 S. W. 2d 64

Opinion delivered June 6, 1960.

*Tom Gentry* and *L. M. Alexander,* for appellant.

*Mehaffy, Smith & Williams, B. S. Clark,* for appellee.

GEORGE ROSE SMITH, J.   This is a suit by the appellant to recover total and permanent disability benefits at the rate of $200 a month.   It was stipulated that if the jury found that the plaintiff was disabled for the entire period involved (extending from the thirtieth day after his injury in an automobile accident up to the date of trial) then he would be entitled to recover $2,975.   The jury returned a general verdict for the plaintiff for only $2,250, and both parties appeal.

The opposing contentions could not be more completely at variance.   On direct appeal the insured contends that there is no substantial evidence to justify the jury in reducing his award, so that we should either increase the judgment to the full amount or grant a new trial.   On cross appeal the insurance company contends that there is no substantial evidence to support any recovery at all, so that the judgment should be reversed and the cause dismissed.

We first consider Alexander's direct appeal.   He is the president and principal stockholder of Alexander Incorporated, an automobile parts rebuilding business which at the time of trial had eighteen employes.   Before his accident on February 11, 1958, Alexander, according to his own testimony, devoted from 12 to 15 hours of physical activity to the business seven days a week. When he was on the road Alexander put in long hours driving in Arkansas and neighboring states, calling upon dealers, garages, and wrecking yards.   On these trips he bought used transmissions, weighing as much as 210 pounds, and loaded them into his car.   He also solicited orders for the resale of transmissions after they had been rebuilt by his company.   On alternate weeks Alexander stayed at home and worked in the shop at Little Rock. There he tore down used transmissions, which required strenuous exertion, stood for extended periods at the lathe, supervised and instructed his employees, attended to administrative work, etc.

In the accident Alexander suffered a broken nose, crushed chest, broken ribs, injured knees, and, most

serious, a spinal injury. He was in the hospital for a few days and submitted to traction treatment for several months. After about two weeks Alexander was able to return to work for an hour a day, and by the time of the trial he was working 5 or 6 hours a day for five and a half days a week. He testified, and his doctor corroborated this, that he was unable to do heavy lifting, that he could no longer drive the long hours required for road trips, that he can stand at the lathe for no longer than 15 minutes, and that his activity has been curtailed in other respects that we need not detail. A medical witness for the defendant gave testimony from which the jury might have found that Alexander could perform all his former duties, although with restrictions which amounted in the witness's opinion to a 5% disability to the body as a whole.

On direct appeal there are two answers to the insured's contention that there is no basis for any award other than the full amount sued for. First, there is substantial evidence to support the view that Alexander is no longer totally disabled. The jury could, of course, have found that the insured was completely incapacitated soon after his accident, while he was in the hospital or in traction. But the testimony about his condition at the time of trial consists either of his own statements or of the opinions of others who depended at least in part upon what Alexander told them about himself. The jury was not compelled to accept this testimony as undisputed, especially in view of the opinion expressed by the appellee's medical witness, and hence the verdict may represent the jury's belief that the plaintiff is no longer totally disabled.

Secondly, where there is substantial evidence to support a finding for either side we are not at liberty to increase the amount of a general verdict to the full amount called for by the plaintiff's theory of the case. In this situation we have recognized in *Fulbright* v. *Phipps,* 176 Ark. 356, 3 S. W. 2d 49, and similar cases, that the partial award may be the result of a compro-

mise in the jury room. It is plain enough that if we undertook to tamper with such a verdict the arguments in favor of increasing it would be equally balanced by those in favor of decreasing it.

The question presented by the cross appeal is more difficult. It cannot be said that Alexander's earning capacity has been completely destroyed. His efforts at the shop, even though on a part-time basis, contribute something to the earnings of the corporation. On the other hand, the jury may have believed that Alexander's earning power has been substantially reduced. He testified that he had found it necessary to employ two new men to take care of the road trips, and he had increased his working force at the shop. It is really impossible to say to what extent Alexander's earnings have been reduced by his injuries, for part of his income is attributable to his almost complete ownership of the business.

In view of the evidence the appellee insists that the case falls within our decisions holding that an insured is not totally and permanently disabled if he is able to earn a livelihood, even though his earning power is reduced. The appellant answers this argument by citing our cases that say the test is whether the insured can perform all the substantial and material duties of his occupation. In candor it must be conceded that all our decisions upon the subject cannot be harmonized.

Without undertaking to discuss every pertinent case in our reports we may illustrate the problem by examining a few of our principal cases supporting each of the divergent views. In *Metropolitan Life Ins. Co.* v. *Guinn,* 199 Ark. 994, 136 S. W. 2d 681, the insured had been a coal miner earning four or five dollars a day. As a result of a leg injury he could no longer work in the mines, but he was able to earn about $7.50 a week as a dishwasher and menial helper in a restaurant. We held that he was not totally and permanently disabled, because he was able to do at least some work for compensation. This case cannot be reconciled with *Metropolitan Life Ins. Co.* v. *Hawley,* 210 Ark. 855, 198 S. W. 2d 171,

where the insured was compelled to give up his work as a newspaper circulation manager, but he was able to earn a reduced income as a part-time salesman. We held that the proof that the insured had been forced to resort to some other occupation, from which he could not earn a livelihood reasonably comparable to that which he was earning when he obtained the insurance, presented a jury question on the issue of total disability.

Several of our cases, like the one at bar, involve persons owning their own businesses. In *General Am. Life Ins. Co.* v. *Chatwell*, 201 Ark. 1155, 148 S. W. 2d 333, the insured conducted a paint and paper store. After his injury he continued to operate the business, but he could not carry out some of his former activities, such as lifting paint cans and rolls of paper, and he employed an additional clerk. We denied recovery, holding that Chatwell was not "wholly prevented from engaging in any gainful occupation whatever." The same result was reached upon essentially similar facts in *Mutual Life Ins. Co. of N. Y.* v. *Phillips*, 202 Ark. 30, 149 S. W. 2d 940.

The cases just cited are hardly consistent with the more liberal construction that we placed upon disability policies in decisions before and after those cases. In *Aetna Life Ins. Co.* v. *Spencer*, 182 Ark. 496, 32 S. W. 2d 310, the owner of a truck and produce business, although afflicted by arthritis, was able to carry on his occupation by taking his sons into partnership and limiting his own participation to supervisory and administrative duties. We upheld a finding of total and permanent disability. Similarly in *Monarch Life Ins. Co.* v. *Riddle*, 193 Ark. 572, 101 S. W. 2d 781, the proprietor of a beer distributorship lost the use of his right arm and so was unable to handle beer barrels or to drive a truck as he had formerly done. He was nevertheless able to continue his business, which expanded and prospered, by employing others to do the work under his supervision. A finding of total incapacity was upheld by a closely divided court. More recently we sustained a verdict

for the insured in *Franklin Life Ins. Co.* v. *Burgess,* 219 Ark. 834, 245 S. W. 2d 210, despite the fact that the plaintiff was able to engage in limited activity as a clerk in a grocery store.

After reconsidering the whole question we are unwilling to follow cases such as the *Guinn, Chatwell,* and *Phillips* decisions, which hold that there can be no recovery even though the insured is unable to perform all the substantial and material duties of his occupation and even though his incapacity results in a substantial and demonstrable loss of earning power. In such a situation we think the proof presents a question of fact for the jury to decide. It is therefore our conclusion that the verdict for the appellant in this case is supported by substantial proof.

The appellee also suggests that the policy in question is unlike those considered in our prior cases, because it refers to a total loss of time and to a partial loss of time rather than to total disability. We have consistently refused to construe such clauses literally, for in that event the insured could recover only if he were continuously and helplessly confined to his bed. We perceive no real distinction between the language of the appellee's policy and the clauses construed in our earlier decisions. Indeed, in some of our prior cases, such as *Monarch Life Ins. Co.* v. *Riddle, supra,* and *Aetna Life Ins. Co.* v. *Orr,* 205 Ark. 566, 169 S. W. 2d 651, the contract referred to a loss of time, but the opinions attached no importance to that particular wording.

Affirmed on direct and cross appeal.