MUTUAL LIFE INSURANCE COMPANY
OF NEW YORK v. CAREY E. CLARK

73-67                                    502 S.W. 2d 110

Opinion delivered December 17, 1973

*Chowning, Mitchell & Hamilton,* for appellant.

*Spencer & Spencer,* for appellee.

CONLEY BYRD, Justice. Appellant, Mutual Life Insurance Company of New York, issued a total disability policy to appellee, Carey E. Clark, in which the term total disability is defined to mean ". . . a disability which wholly and continuously disables the member so that he can perform no duty pertaining to his occupation and during which he is not engaged in any occupation for remuneration or profit. . . ." To reverse a judgment, entered on a jury verdict, in favor of appellee for total disability benefits, appellant contends:

"I. The court erred in overruling the defendant's motion for directed verdict made at the conclusion of all of the evidence and in refusing to give defendant's requested instructions Nos. 2 and 3.

II. The court erred in giving court's instruction No. 6 (plaintiff's No. 5) over the general and specific objections of appellant.

III. The Court erred in giving court's instruction No. 8 (plaintiff's No. 6) over the general and specific objections of appellant."

The record shows that appellee, a veterinarian, was the sole owner and operator of Clark Animal Hospital in El Dorado from 1950 until April 12, 1968, when he suffered a heart attack. At that time he was placed in intensive care for nine days and remained in the hospital for an additional ten days before being permitted to go home. Upon being advised by his physician that he could not continue to operate the animal hospital and carry on his veterinarian practice, he employed a young veterinarian, Dr. Granville Wright, to take over the main load of his occupation. Dr. Wright stayed for two years before leaving. Appellee then employed Dr. Gene Dunn and later employed a second veterinarian to assist in the operation of the animal hospital and to help with the large animal practice. Appellee no longer does any large animal practice but does go by the hospital. Some days he spends no

more than five minutes at the animal hospital. Other days he spends as much as five or six hours. It is estimated that he will average somewhere between 14 to 16 hours at the clinic each week. While there he may perform minor operations on small pets, such as spays or tonsillectomies. He is interested in the financial success of the hospital and likes to be consulted on the purchase of drugs and difficult cases. His gross receipts and net profits for the operation of the animal clinic for the years of 1966 through the first nine months of 1972 were as follows:

| Year | Gross Receipts | Net Profit |
|------|----------------|------------|
| 1966 | $54,596.00 | $19,426.00 |
| 1967 | 57,930.00 | 20,803.00 |
| 1968 | 50,163.00 | 10,572.00 |
| 1969 | 66,980.00 | 13,771.00 |
| 1970 | 80,740.00 | 26,763.00 |
| 1971 | 95,279.00 | 29,252.00 |
| 1972 (9 mos.) | 82,252.00 | 26,971.00 |

The foregoing figures for the years 1968 through 1972 have used the salaries of the two employed veterinarians as expenses before arriving at net profits.

Dr. Jacob Ellis testified that appellee suffered what is technically known as an infarction of the miocardiam which is sometimes referred to as coronary thrombosis or coronary occlusion. He considers appellee to be permanently and totally disabled. He consented to appellee working if he had proper assistance to where he would not negotiate physical or mental effort that would be stressful to him under any set of circumstances. While testifying that appellee was more disabled in 1972 because of the progressive nature of the disease than he had been since April of 1968, Dr. Ellis testified that it was necessary that a person, with appellee's disease, be stimulated physically and mentally to the fullest extent possible to improve circulation. He described the situation as "walking a tightrope between activity and inactivity."

Dr. Joseph B. Wharton, Jr. stated that in his opinion appellee was unable to perform his doctor of veterinary medicine work physically to any degree that would gain him a continuous livelihood.

Appellant paid the disability benefits for 1968. In 1969, after some investigation, appellant wrote appellee as follows:

"Dear Dr. Clark:

This is in reference to our conversation of May 27th.

As you are aware, we authorized payment of your Disability Benefits under this Policy. I would anticipate that by now you have received your benefit check from AVMA.

I would like to point out however that there was some doubt in our minds as to whether you currently qualified for these payments under the terms of the policy. However, at this time we have resolved the doubts in your favor.

Your request that we accept claim statements on a quarterly rather than a monthly basis cannot be complied with. While we are quite pleased to learn that your doctor indicates that he no longer needs to see you every month because of the progress you have made, we will, nevertheless, not be able to grant this request. However, we are willing to allow you to submit claim statements every other month.

I'm sorry for the delay which resulted however because of the circumstances of your particular situation it was necessary to conduct a thorough review of your file. If you have any questions, please feel free to call me.

Sincerely,

Milton W. Johnson
Senior Approver
Group A&S Claims
Mail Drop 20-1"

In 1970 appellant had appellee examined by Dr. Wells in Little Rock, Ark. and continued the disability payments

through December, 1971. On January 14, 1972, appellant wrote appellee as follows:

"Dear Dr. Clark:

Your file has been referred to me for review.

As you know your Policy defines total disability as 'a disability which wholly and continuously disables the member so that he can perform no duty pertaining to his occupation and during which he is not engaged in any occupation for remuneration or profit.'

We no longer feel that you qualify for total disability benefits under this definition.

MONY is glad to have been of help to you during your period of total disability.

Sincerely,

(Miss) Anne McNamara
Senior Claims Approver
Group A&S Claims Section
Mail Drop 807"

POINT I. Appellant here argues that it was entitled to a directed verdict. In so doing it recognizes the effect of decisions such as *Avemco Life Insurance Company* v. *Luebker*, 240 Ark. 349, 399 S.W. 2d 265 (1966), and therefore does not seek a reversal on the grounds that there was insufficient testimony to go to the jury on the question of whether or not there were any substantial and material acts necessary to be done pertaining to appellee's occupation that he could not perform in the usual and customary way.

On the other hand appellant contends that the definition means what its language says—*i.e.,* that proof of physical disability or inability alone does not entitle appellee to recover, but that he must also prove by a preponderance of the evidence that during such period of disability he was not engaged in any occupation for remuneration or profit. In its reply brief appellant takes the

view that the phrase "and during which he is not engaged in any occupation for remuneration or profit" should be treated as a condition precedent to recovery.

Most authorities recognize that "total disability" occurs where a professional is unable to perform any substantial part of his ordinary duties even though he can still perform some of them, *Leibowitz* v. *Mutual of Omaha Ins. Co.*, 71 Misc. 2d 838, 337 N.Y.S. 2d 314 (1972), or that he may be able to perform some acts at intervals, *Pacific Mutual Life Ins. Co.* v. *McCrary*, 161 Tenn. 389, 32 S.W. 2d 1052 (1930). Our own cases have given similar constructions to policies such as is here involved. See *Alexander* v. *Mutual Benefit Health & Accident Association*, 232 Ark. 348, 336 S.W. 2d 64 (1960), and the cases therein discussed.

The definition of "total disability" here involved is not substantially different from the definition involved in *New York Life Insurance Company* v. *Dandridge*, 204 Ark. 1078, 166 S.W. 2d 1030 (1942), which provided that disability should be considered total when the insured is "wholly prevented from performing any work, from following any occupation, or from engaging in any job for remuneration or profit." We there permitted a recovery on behalf of a deaf school teacher even though it was conceded she was not completely helpless. In *Occidental Life Insurance Company of California* v. *Sammons*, 224 Ark. 31, 271 S.W. 2d 922 (1954), we permitted a recovery for an insured suffering from a heart condition who had earned $180 as a part time salesman notwithstanding a house confinement clause. In each instance we have pointed out that we have refused to construe such clauses literally, for in that event the insured could recover only if he were continuously and helplessly confined to bed. We perceive no real distinction between the language of appellant's policy and the clauses construed in our earlier decisions. Consequently, we hold that the trial court properly overruled appellant's motion for a directed verdict.

POINT II. The instruction of which appellant complains provided:

"You are instructed that the provisions of the policy which I have quoted relating to total disability do not mean what a literal reading would require, that is, a state of absolute helplessness; but they mean that, if there are any substantial and material acts necessary to be done pertaining to Plaintiff's occupation that he could not perform in the usual and customary manner, he would be totally disabled within the meaning of this policy."

Appellant objected on the basis that the instruction ignored the policy provision "and during which he is not engaged in any occupation for remuneration or profit." We find no error. To accept appellant's contention would require a literal construction of such policies which, as we have pointed out under Point No. I, *supra,* this and most other courts refuse to do.

POINT III. The instruction to which appellant here objects provided:

"You are instructed that insurance to compensate a total disability is not insurance upon one's business but is a guarantee of continued personal fitness enabling one to employ and adapt not only his mental qualification and mental preparation for his business; but also the continued use of physical vigor and energy in the performance of manual pursuits connected with his business as well, to the extent that he may perform all the substantial and material acts necessary to be done in the conduct of his business in the usual way."

The objection of appellant is that the instruction is abstract, reverses the burden of proof and ignores the requirement that appellee had to prove that he was not engaged in an occupation for remuneration or profit.

The contention that the instruction was abstract is not supported by the record. Appellant had introduced for comparison purposes appellee's income tax records for the periods before and after the heart attack episode in April 1968.

The argument that the instruction ignored the requirement that appellee must prove that he was not engaged in an occupation for remuneration or profit is premised upon appellant's theory that such a showing was a condition precedent to recovery. As we have pointed out under Point No. I, *supra,* policies such as this do not receive such a literal construction but are related to the definition of "total disability". In fact the record would indicate that from April of 1968 through December, 1971, appellant must have interpreted the policy in accordance with our construction thereof since it made payments for those periods.

We do not understand how this instruction reversed the burden of proof that was clearly given to the jury under the other instructions.

Affirmed.

FOGLEMAN and JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I join in the dissenting opinion of my brother Jones. I would add two comments.

1. Any danger that insurance companies may try to eliminate any chance of recovery for total disability in a policy by writing a definition could be controlled by the requirement that a policy be approved by the Insurance Commissioner, who may disapprove it if it contains misleading clauses or exceptions or conditions which deceptively affect the risk purported to be assumed in the general coverage of the contract. Ark. Stat. Ann. §§ 66-3209, 3210 (Repl. 1966).

2. It is high time that this court give attention to the notice given to the bar February 21, 1966, that cases tried after that date would be examined in the light of recommendations contained in the opinion in *Avemco Life Insurance Company* v. *Luebker,* 240 Ark. 349, 399 S.W. 2d 265, where the court, "with very considerable reluctance," followed *Mutual Benefit Health & Accident Association* v. *Murphy,* 209 Ark. 945, 193 S.W. 2d 305,

the fountainhead of our very extreme and unsound position from which this court dictates the terms of total disability policies.

J. FRED JONES, Justice, dissenting. As I interpret the majority opinion in this case, it simply prohibits insurance companies from entering into contracts with a definition and meaning of "total disability" different from the general definition and meaning we have applied in prior cases where it has been necessary for this court to define total disability within the meaning of a particular contract.

The group policy involved in this case insured a veterinarian against total disability defined as ". . . a disability which wholly and continuously disables the member so that he can perform no duty pertaining to his occupation and during which he is not engaged in any occupation for remuneration or profit. . . ." The evidence as I read it indicates that Dr. Clark did have a heart attack which did wholly and continuously disable him so that he could perform no duty pertaining to his occupation for a period of time; that after his recovery from the initial attack he was still wholly and continuously disabled from performing the more rugged duties of his occupation such as vaccinating and operating on large unruly animals such as horses, cattle and large dogs, but was able to and did engage regularly in the routine duties pertaining to his occupation at his clinic to the extent of vaccinating and performing surgery on small dogs and other animals.

Had the policy in the case at bar simply insured against total disability without attempting to define what would constitute "total disability" for the purpose of payments under the terms of the policy contract, or even if the policy definition had been ambiguous, then certainly I would agree that general definitions and meanings we have announced and approved in prior cases should be applied. I would agree that "total disability" must be something less than a vegetable state but certainly it should be more than inability to perform a single one of many duties pertaining to an occupation.

In any event, it is my view that insurance companies and individuals should be permitted to define "total disability" within the meaning of their contracts for the purpose of indemnity payments and premium rates, so long as the definition does not conflict with the term it defines, and so long as it does not go beyond the bounds of good conscience and common sense.

The policy in the case at bar was a group policy for the benefit of veterinarians, and I think we might reasonably assume that it was written on a premium rate commensurate with the loss ratio based on what constitutes total disability as defined in the policy. As I read the majority opinion, it would indicate that if the insurance company had simply referred to the disability as "disability" and had not referred to it as "total disability," there would have been no limitation on the insurance company in defining the extent of disability it was insuring against. On the other hand, if the company had simply insured against "total disability" without attempting to define what it meant by total disability, then, of course, it would have been this court's duty to have applied the general definition of total disability in which the instructions complained of would have been proper instructions.

It appears to me that the cases cited by the majority are clearly distinguished from the case at bar. A total and permanent disability policy was involved in *New York Life Ins. Co.* v. *Dandridge*, 204 Ark. 1078, 166 S.W. 2d 1030, and to be totally and permanently disabled under the terms of the policy, it provided that: "Disability shall be considered total whenever the insured is so disabled by bodily injury or disease that he is wholly prevented from *performing any work,* from *following any occupation,* or from *engaging in any business* for remuneration or profit. . . ." (Emphasis supplied). The insured in that case was a school teacher who had become deaf followed by a nervous condition resulting in indigestion, insomnia and other complications.

*Occidental Life Ins. Co. of Calif.* v. *Sammons,* 224 Ark. 31, 271 S.W.2d 922, involved a monthly indemnity

policy under which it was provided that monthly indemnity would be paid for life and while the insured was wholly and continually disabled and necessarily and continuously confined and regularly visited and treated by a physician as defined in the policy. The policy then provided that the monthly indemnity shall be payable for such disability only if the insured is absolutely unable to leave the house and the yard situated immediately around the house; that in order to receive the monthly indemnity the insured must at all time remain within such confines without any exception but one, namely the insured, when deemed necessary and prescribed by the physician or surgeon, may be transported to the office of the physician or surgeon or to the hospital or sanitarium. The policy further provided that if at any time the insured should leave such confines except for such transportation to the office of the physician, hospital or sanitarium, the monthly indemnity should terminate and the rider would be of no force or effect. In that case this court adopted the "liberal" construction as to "house confinement clauses" and held that the trial court did not err in applying the liberal construction of the policy in that case. It was stipulated in the *Sammons* case that the insured had left the house and yard for the purpose of taking rides and walking for recreation and visiting friends at various business places, all under the advice of his physician.

In *Avemco Life Ins. Co.* v. *Luebker,* 240 Ark. 349, 399 S.W.2d 265, the policy definition is not set out but the case turned on whether the insured was disabled from performing *all* (rather than *any*) of the substantial and material acts necessary to the prosecution of his business.

In *Alexander* v. *Mut, Benefit Health & Accident Ass'n.,* 232 Ark. 348, 336 S.W.2d 64, the provisions of the insurance policy are not set out in the opinion but the insurance company argued that the insured was not totally and permanently disabled if he was able to earn a livelihood. The insured relied on the cases applying the test as to whether the insured can perform all the substantial and material duties to his occupation. The trial court and jury agreed with the insured and we affirmed.

I am of the opinion that the contracting parties in an insurance contract have a right to agree on the extent of disability that is insured against, even under the term "total disability" when the definition is clear, reasonable and not misleading, and where ambiguities are not open to definition by courts of law. I would reverse.