**Julie Ann Dodd BRASHER, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

**Civ. No. 91–2022.**

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Aug. 19, 1991.

James M. Dunn, Warner & Smith, Fort Smith, Ark., for plaintiff.

John R. Beasley, Bethell, Callaway, Robertson & Beasley, Fort Smith, Ark., for defendant.

MEMORANDUM OPINION

MORRIS SHEPPARD ARNOLD, District Judge.

Plaintiff Julie Ann Dodd Brasher sues under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover certain death benefits under an insurance policy issued to her deceased husband, Terry Dodd, when he was employed by Prudential, that is, between October 5, 1987, and June 2, 1989. Plaintiff claims that at the time Terry Dodd terminated his employment with Prudential and until his death on November 26, 1989, he was "totally disabled," a condition necessary for her to recover un-

der the policy. In its motion, defendant takes issue with plaintiff's suggestion that Terry Dodd was "totally disabled" when he left Prudential's employ.

Each section of the group policy contains a different definition of "total disability," as each section applies to different types of benefits. Part (a), the portion of the policy relevant here, applies to basic group life, survivors' benefits, and supplemental life insurance. *See* Policy, p. 1(a)27. Part (b) applies to short-term disability benefits, *see* p. 1(b)7, and part (c) applies to long-term disability benefits, *see* pp. 1(c)14–15.[1] In its brief, defendant focuses on the definition contained in part (c). This, however, is not helpful, since plaintiff is not making a claim for long-term disability benefits. Accordingly, the court will focus on the definition proffered in part (a) of the policy.

Part (a) provides that benefits will be available:

if an Employee, while less than sixty-five years of age and while insured under the Group Policy, *becomes totally disabled from bodily injury or disease so as to be wholly prevented from performing any work or engaging in any occupation for remuneration or profit....*

Policy No. G–1690, p. 1(a)27 (emphasis added). Part (a) further provides that all insurance on the employee shall terminate:

if the Employee has furnished proof that he is totally disabled *but nevertheless again becomes able to perform some work or to engage in some occupation for remuneration or profit....*

*Id.,* p. 1(a)28 (emphasis added). Relying on this definition, defendant contends that Mr. Dodd was not totally disabled because he

could and did work to his "profit" for both Prudential and two other employers during the course of his alleged "disability."

Upon leaving Prudential on June 2, 1989, Mr. Dodd first went to work for Silbernagel Sales Company, where he was to earn a commission selling liquor. He was fired less than a month later, that is, on June 26, 1989, because, according to his supervisor, "it was determined that he was unable to perform the job requirements to company expectations." Supp. Affidavit of Ivan Ransom. Despite his regular attendance, Mr. Dodd's employment record from Silbernagel is rather bleak. The record rates Mr. Dodd's "ability" as "poor" and his "productivity" as "slow." Terry Dodd was next employed from September 11 to October 14, 1989, as a salesperson for a firm selling electric fence chargers. Again Mr. Dodd was fired because of his poor performance and apparent volatility after fighting with a customer. *See* Affidavits of John Reeder.

Plaintiff, however, suggests that a reasonable jury could and, based on the testimony of Terry Dodd's wife, Julie Ann Dodd Brasher, his employers, and several medical experts (whose affidavits are included in the materials), would understand these events as further evidence that Mr. Dodd was disabled. Plaintiff intends to show that after sustaining a sub-arachnoid hemorrhage on March 7, 1985, Terry Dodd made several efforts to find and keep a job before he was hired by Prudential on October 5, 1987. Further, as a result of the brain hemorrhage, his mental capacities progressively declined, so that by time of his termination of service with Prudential

---

1. In its original motion for summary judgment defendant did not once refer to part (d)—the "New Plan of Service Disability Benefits." Thus the court is somewhat surprised by the defendant's reply brief which attempts to make use of the more stringent "New Plan" definition of disability. Part (d) of "New Plan" requires that an employee be under the regular care of a physician in order to obtain disability benefits. It appears, however, that the part (d) definition of "disability" discussed by the defendant in its reply brief applies only to short-term disability benefits. *See* p. 1(d)11. Thus, if the definition at p. 1(d)11, requiring Terry Dodd to have been under the care of a physician to receive short-

term disability benefits, should in fact supplant the part (b) definition (containing no such requirement), the only effect will be to make the 26–week short-term disability benefits unavailable to plaintiff. As defendants have obscured this issue by not addressing it in their original motion, it remains unclear whether or not the "New Plan" applies. Thus for the purposes of summary judgment against the plaintiff, the defendant has not met its burden of showing that "New Plan" applies to plaintiff's claim. The court notes once again that even if part (d) is applicable, plaintiff's claims for basic group life, survivors' benefits, and supplemental life insurance are not affected.

on June 2, 1989, he was "totally disabled," and was, moreover, unaware of the extent to which he was in fact incapacitated. Plaintiff suggests that Mr. Dodd's infirmity caused him to perform poorly at Prudential. His wages, for example, dropped from an average of $355 per week in 1987 to somewhat less than $200 per week in 1989. *See* Supplement to Affidavit of Julie Ann Dodd Brasher. But, in the sadly mistaken belief that he could hold a job that would earn him a better living, Mr. Dodd quit his job with Prudential and obtained two other positions, both of which were short-lived. He was not, quite obviously, able to satisfy either of his new employers. *See* Affidavits of Reeder and Ransom. Plaintiff contends that Terry Dodd would have been terminated from any other employment as well, since his illness made him volatile and unable to process information in the way that would be needed to pursue any type of career. Thus, plaintiff argues, the question of whether or not Mr. Dodd was totally disabled at the time of his termination is a question of . fact that should be left to the jury.

■ Defendant denies that there is a jury question here, both because of the plain language of the contract and because no jury is available in an ERISA action. With regard to the latter issue, although courts are apparently somewhat divided over whether an ERISA action may be tried to a jury, *see* Annotation, *Plaintiff's Right to Jury Trial in Civil Action under § 502(a)(1)(B) of Employee Retirement Income Security Act,* 56 A.L.R.Fed. 880 (1982), in this district it is "fairly well-established that jury trials are not inappropriate in all actions under ERISA." *Baker v. Universal Die Casting, Inc.,* 725 F.Supp. 416, 418 (W.D.Ark.1989). Indeed, the Eighth Circuit has stated that under the seventh amendment to the Constitution, a plaintiff may be entitled to a jury trial if the nature of the action is legal rather than

equitable. *See In re Vorpahl,* 695 F.2d 318, 322 (8th Cir.1982). An action to recover money due under a contract is plainly a legal action. In sum, if the court finds there to be a genuine issue of material fact as to whether or not Mr. Dodd was totally disabled, such a question would be amenable for resolution by a jury.

■ Defendant also asserts that Mr. Dodd does not qualify as totally disabled under the policy. As noted above, the policy requires that an employee be:

> totally disabled from bodily injury or disease so as to be wholly prevented from performing any work or engaging in any occupation for remuneration or profit. . . .

Policy, p. 1(a)27. Plaintiff concedes that a literal application of the policy language would preclude recovery in this case but suggests that a literal construction requires that Mr. Dodd be practically catatonic before being entitled to benefits, and would permit Prudential, who is both the employer and the insurer, to deny benefits to an employee even if he is able to perform only the simplest, most menial job. Plaintiff's Brief at 3–4. Plaintiff argues that federal common law allows, indeed requires, that the court attempt to avoid such a result. Plaintiff's Brief at 4–7. To support this view, plaintiff cites *Helms v. Monsanto Company, Inc.,* 728 F.2d 1416, 1420 (11th Cir.1984) (refusing to adopt strict and literal interpretation of the policy's definition of total disability that would preclude all but the entirely helpless from receiving benefits; court fashioned more realistic definition), and *Russell v. Prudential Insurance Co.,* 437 F.2d 602, 605 (5th Cir.1971). The Eighth Circuit has yet to rule on this point in an ERISA case, but the court believes that the principles articulated in *Helms* and since accepted by the Ninth and Tenth Circuits [2] are reasonable ones and would probably be accepted by the Eighth Circuit.

---

**2.** *See Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1285 (9th Cir.1990) (citing *Helms* ); *Torix v. Ball Corp.,* 862 F.2d 1428, 1431 (10th Cir.1988) (adopting the *Helms* court's new rule that "a reasonable interpretation of a claimant's entitlement to payments based on a claim

of 'total disability' must consider the claimant's ability to pursue gainful employment in light of all the circumstances. . . . [R]ecovery may not be denied on the basis of overly restrictive interpretations of the plan's language").

The policy definition of "total disability" at issue in *Helms* was remarkably similar to the definition herein. The *Helms* policy permitted recovery if the employee was:

totally disabled by reason of bodily injury or disease so as *to be prevented thereby from engaging in any occupation or employment for remuneration or profit....*

*Helms,* 728 F.2d at 1418 (emphasis added). The Eleventh Circuit rejected an "absolute and literal interpretation" of this term because it would render the plan "totally meaningless," since such an interpretation could mean that benefits would be paid only if the claimant had "no 'conscious life.'" *Id.* at 1420. In order to arrive at a practicable interpretation of the term, the *Helms* court turned to analogous social security and insurance cases for guidance, including, among others, a case from our circuit that also allows for a broad construction of the term "total disability." *See General American Life Insurance Co. v. Yarbrough,* 360 F.2d 562, 565 (8th Cir. 1966) (under Arkansas law an insured "is not required to establish that he is completely helpless or bedfast in order to show compensable total disability. He need only be so disabled as to be unable to perform all the substantial and material acts of his business or trade or the execution of them in the usual or customary way"). *Helms* then adopted the view that a reasonable construction of the term "total disability" would be:

physical inability to follow any occupation from which [one] could earn a reasonably substantial income rising to the dignity of an income or livelihood, even though the income is not as much as he earned before the disability.

*Helms,* 728 F.2d at 1421–22. This definition focuses on the likelihood of a substantial income that "approach[es] the dignity of a livelihood." *Id.* at 1421.

Even if this court preferred to refrain from effecting such a revision of this relatively straightforward policy provision, it appears that such is the practice in a substantial number of states, including Arkansas, as well as under what apparently constitutes the "federal common law" of ERISA.[3] Thus, what remains for the court to consider is whether, under the construction proffered by *Helms,*[4] there exists a material question as to whether or not Terry Dodd was "totally disabled." As the court stated in *Helms,* "[p]ermanent disability is a question of fact that depends upon all of the circumstances." *Helms,* 728 F.2d at 1420. Bearing this in mind, it is time to consider again the evidence submitted by the parties.

■ The evidence on the record in support of plaintiff's claim that Mr. Dodd was so disabled as to be unable to pursue gainful employment is sufficient for the case to survive defendant's motion for summary judgment as to the question of disability. First, as noted above, it appears that Mr. Dodd's salary at Prudential had deteriorated substantially during the course of his employment there. Second, several medical experts have submitted affidavits describing the nature and extent of his problems. It is the province of the jury to decide which of these experts are the most credible and to what extent Mr. Dodd's

---

**3.** The law in Arkansas, as in most jurisdictions, is in accord with *Helms* in attempting to fashion a reasonable construction of total disability. *See* Annotation, *Insurance: "Total Disability" or the Like as Referring to Inability to Work in Usual Occupation or in Other Occupations,* 21 A.L.R.3d 1155, § 3 at 1165 (1968); *Mutual Life Insurance Co. v. Clark,* 255 Ark. 741, 746, 502 S.W.2d 110 (1973) (veterinarian who had heart attack and thereafter averaged 14 to 16 hours a week at clinic, occasionally performing minor surgery and consulting on difficult cases, held entitled to total disability payments; court supported the rule that total disability clauses in insurance policies are not to be construed literally, that is, insured is totally disabled, under general disability provision, when unable to perform duties of particular occupation); *Continental Casualty Co. v. Davidson,* 250 Ark. 35, 42, 463 S.W.2d 652 (1971); *Alexander v. Mutual Benefit Health and Accident Association,* 232 Ark. 348, 353, 336 S.W.2d 64 (1960); *see also Waganer v. Travelers Insurance Co.,* 269 Ark. 976, 977–78, 601 S.W.2d 277 (Ark.App.1980).

**4.** If the court were to consider the policy definition in the ordinary way, that is, literally, plaintiff would certainly be, as she acknowledges, precluded from recovering benefits under the policy.

illness in fact impaired his ability to engage in gainful employment. The fact that he was employed briefly by two different employers after he left Prudential may be construed as augmenting the medical evidence, and may even suggest that Mr. Dodd was so disabled by his illness that he could not pursue anything other than what the *Helms* court termed "nominal employment." *Id.* at 1421. For it appears that Terry Dodd did actually try to find "gainful" employment, not just once but twice, and each time, despite a favorable initial impression, he was quickly deemed incompetent by his new employer. What is more, Terry Dodd allegedly had trouble, after his accident and before being employed by Prudential, retaining employment. From all this, a jury could reasonably infer that, in accordance with the criterion set out by *Helms*, Terry Dodd was "totally disabled" before he left Prudential's employ. Specifically, the jury could conclude that, on or before June 2, 1989, by virtue of continued ill effects of the brain hemorrhage he suffered in 1985, Terry Dodd was unable to "follow any occupation for which he could earn a reasonably substantial income rising to the dignity of an income or livelihood." *Id.* at 1421–22.

Accordingly, defendant's motion for summary judgment will be denied.