**Syed I. GHAZI and Syeda Ghazi, Plaintiffs,**

v.

**FISERV, INC. and Unum Life Insurance Company of America, Defendants.**

No. 95 C 0258.

United States District Court,
N.D. Illinois,
Eastern Division.

March 17, 1997.

Robert D. Greenwalt, West Chicago, IL, for Plaintiff.

Mary Patricia Benz, Quinlan & Crisham, P.C., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The defendants, Fiserv, Inc. ("Fiserv") and UNUM Life Insurance Company of America ("UNUM"), move for summary judgment on the complaint filed by the plaintiffs, Syed I. Ghazi[1] and his wife, Syeda Ghazi. For the reasons stated above, the defendants' motion is denied.

### I.[2]

Mr. Ghazi was employed by Fiserv as a computer operator. While so employed, Mr. Ghazi was entitled to certain "fringe" benefits, issued to Fiserv by UNUM. Specifically, Fiserv and UNUM provided a group life insurance policy, whose coverage discontinued when the insured was no longer employed by Fiserv. The coverage extended beyond termination of employment, however, if the employee became "totally disabled" while still employed. An employee would be deemed "totally disabled" if he or she was "unable to perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience." To be entitled to this coverage, an employee had to give notice and furnish "first proof" of the disability within a year of the disability's onset. UNUM and Fiserv waived the one-year proof, but not the notice, requirement, if the insured died within a year of the disability's commencement.[3] Mr. Ghazi received Fiserv's employee benefit book which set forth the above information.

Mr. Ghazi last reported to work on June 22, 1994. On that day, he was able to per-

form his duties as a computer operator. Mr. Ghazi called in sick on June 23 and took vacation days on June 24, 28 and 29. He was absent from work from June 30 to July 7 without an excuse.

His supervisor, Tom Immer, called Mr. Ghazi on June 30 and Mr. Ghazi told him that he was taking medication that would not allow him to drive to work. On July 7, Fiserv sent an overnight letter to Mr. Ghazi requesting a call by noon on July 8, and indicating that if no call was received by that time, Fiserv would terminate Mr. Ghazi's employment. Mr. Ghazi did not contact Fiserv, although he received the letter. Fiserv discharged Mr. Ghazi on July 8 for job abandonment.

On September 30, Mr. Ghazi was diagnosed with an inoperable malignant brain tumor, glioblastoma multiforme. On January 9, 1995, Mr. Ghazi died as a result of the brain tumor.

The plaintiffs claim that Mr. Ghazi was "totally disabled" when Fiserv fired him on July 8 and that Mrs. Ghazi, the beneficiary of the life insurance policy, is therefore entitled to the proceeds under the policy in the amount of $92,000. The defendants move for summary judgment.

### II.

The standards for summary judgment are well known and will not be repeated here. To be entitled to life insurance proceeds, the plaintiffs must show three things: one, that Mr. Ghazi was "totally disabled" when he was terminated by Fiserv; two, that he died within a year of the onset of the disability; and three, that the defendants were notified of Mr. Ghazi's "total disability" within a year of its onset. I have previously held that the defendants received notice of the claim of "total disability" within a year of its onset, and it is undisputed that Mr. Ghazi died within a year. Thus, the only issue is whether there is evidence that Mr. Ghazi was

---

**1.** Mr. Ghazi was alive when the case was filed.

**2.** The following facts are undisputed.

**3.** My reading of the relevant provisions, *Ghazi v. Fiserv, Inc.*, 904 F.Supp. 823, 828 n. 6 (N.D.Ill. 1995), is different from that of the defendants

and the plaintiffs. The plaintiffs state that, in the event of the insured's death, the one-year notice requirement is waived along with the one-year proof requirement. The defendants argue that neither requirement is waived.

"totally disabled" when his employment was terminated.

The disability provision in the defendants' life insurance policy is a "general" disability provision. *Hammond v. Fidelity & Guar. Life Ins. Co.*, 965 F.2d 428, 430–31 (7th Cir. 1992). Although referred to as ".total disability," this

> provision[ ] should not be construed so literally that an individual must be utterly helpless to be considered disabled. Rather, the insured should be entitled to recover provided he or she is unable to perform all the substantial and material acts necessary to the prosecution of some gainful business or occupation.

*Id.* at 431. "Gainful" means "any occupation from which [the insured can] earn a reasonably substantial income rising to the dignity of an income or livelihood." *Helms v. Monsanto Co.*, 728 F.2d 1416, 1421–22 (11th Cir. 1984). Total disability "is a question of fact that depends upon all the circumstances of a particular case." *Id.* at 1420. Drawing all reasonable inferences in favor of the plaintiffs, they have raised a genuine issue of material fact that Mr. Ghazi was "totally disabled" on July 8, 1994, the date of his discharge from Fiserv.

Dr. Martin Boyer, Mr. Ghazi's oncologist, testified, with a reasonable degree of medical certainty, that Mr. Ghazi was suffering from a progressive brain tumor on June 28. Dr. Boyer also indicated that the symptoms associated with such a brain tumor are memory loss, headaches, emotional instability, problems with speech, and lethargy. These symptoms are consistent with Mr. Ghazi's complaints to his family physician, Dr. Ashkok Kumar, and with lay testimony submitted by the plaintiffs.

Specifically, on June 28, 1994, Mr. Ghazi saw Dr. Kumar. Mr. Ghazi had consulted him earlier in the year on several occasions, complaining of dizziness, ringing and fullness in the left ear, blurry vision after looking at a computer screen, head and chest pressure, lethargy, and fever. On June 28, Mr. Ghazi complained of fatigue, head and chest pressure, and anxiety. Dr. Kumar treated Mr. Ghazi for allergic rhinitis (runny and stuffy nose), sinusitis (sinus infection), and hypertension by prescribing various medications. He also prescribed an antianxiety medication, Xanax. Mr. Ghazi's daughter, Quartulanne, testified about her father's forgetfulness and a family friend, Amin Hoda, testified that Mr. Ghazi "was somewhat incoherent, absent-minded and depressed." Mrs. Ghazi testified about her husband's frequent headaches.

The defendants attack Dr. Boyer's testimony on several grounds. A factfinder is not precluded from relying on Dr. Boyer's opinion merely because it is based on Mr. Ghazi's symptoms, as reflected in Dr. Kumar's records, and because Dr. Boyer saw Mr. Ghazi for the first time over three months after Fiserv terminated Mr. Ghazi. *See Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir. 1974).[4] Dr. Boyer's admission that Mr. Ghazi's symptoms were consistent with ailments other than a brain tumor does not negate Dr. Boyer's conclusion that Mr. Ghazi was suffering from a brain tumor. First, Dr. Boyer testified that such ailments may exist side-by-side with a tumor. Second, the defendants demand unreasonable precision from Dr. Boyer. Had Mr. Ghazi consulted Dr. Boyer in late June, Dr. Boyer would have offered an equally tentative diagnosis prior to conducting the necessary tests. *See Brasher v. Prudential Ins. Co. of America*, 771 F.Supp. 280 (W.D.Ark.1991) (denying summary judgment on facts similar to those in this case); *Cury v. Colonial Life Ins. Co. of America*, 737 F.Supp. 847, 850–56 (E.D.Pa.

---

4. In *Stark*, the plaintiff was seeking disability benefits from the Social Security Administration. He had to demonstrate, by medically acceptable techniques, that he was suffering from a physical impairment prior to 1951. The court held that the plaintiff could satisfy his burden by offering medical opinion formed in 1957 and based upon lay testimony and the physician's present treatment of the plaintiff. 497 F.2d at 1097. The court stated that "[a] medical opinion does not become unacceptable ... simply because it is based upon a claimant's symptomology, ... or upon medical records and lay testimony.... It is also clear that a diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment." *Id.* (citations omitted). Although not controlling, social security cases are instructive viz-a-viz insurance cases. *Torix v. Ball Corp.*, 862 F.2d 1428, 1431 n. 6 (10th Cir.1988).

1990) (discussing the course of diagnosis of a progressive disease, multiple sclerosis). Moreover, had Dr. Boyer not qualified his deposition responses, the defendants would surely have forced him to do so, by inquiring whether Mr. Ghazi's symptoms were consistent with anything other than a brain tumor.

When his vacation ended on June 30, Mr. Ghazi intended to return to work; yet did not do so. He told his supervisor over the phone that he was taking medication that would not allow him to drive to work. He complained to his wife of not feeling well and of feeling scared of a co-worker who threatened him in the past. The defendants make much of this co-worker, arguing that he was the only reason that: Mr. Ghazi gave for his absence. References to that co-worker are liberally sprinkled throughout Mrs. Ghazi's deposition (defendants' counsel continued to bring up the subject) and in one instance, Mrs. Ghazi stated that her husband's fear was "the only thing" that prevented him from returning to work. However, the brain tumor may have exacerbated, if not caused, Mr. Ghazi's fears because emotional instability is a symptom of a tumor such as Mr. Ghazi's, and Mr. Ghazi complained to Dr. Kumar of anxiety and was prescribed an antianxiety medication on June 28. Moreover, Mrs. Ghazi observed a relationship between her husband's illness and his fear of the co-worker.

Mrs. Ghazi's deposition testimony that her husband intended to return to work after vacation and prior to receiving the July 7 letter from Fiserv does not prove that Mr. Ghazi was not "totally disabled." Rather, it is equally consistent with a conclusion that Mr. Ghazi wished to return to work and expressed his intention to do so, yet was unable because of his failing emotional and physical health. Finally, the fact that, on June 28, Dr. Kumar did not hospitalize Mr. Ghazi or find him to be in acute distress does not preclude the plaintiffs' showing that Mr. Ghazi was "totally disabled," because Mr. Ghazi need not be proven to have been "utterly helpless." *See Hammond,* 965 F.2d at

5. In addition to medical testimony, the plaintiff's record consisted of her testimony and the affidavits of employers for whom Mr. Dodd worked after quitting his job with the defendant. The court did not find Mr. Dodd's employment after

431. Mrs. Ghazi testified that by the end of July, Mr. Ghazi was so ill that he could not go anywhere and was unable to look for a job. I conclude that plaintiffs have presented enough evidence to enable a factfinder to conclude that three weeks earlier, Mr. Ghazi was already "totally disabled," i.e., "unable to perform all the substantial and material acts necessary to the prosecution of some gainful business or occupation." *See Hammond,* 965 F.2d at 431.[5]

### Conclusion

For the reasons stated above, the defendants' motion for summary judgment is denied.

June 2 to be inconsistent with a showing of "total disability" because his repeated dismissals evidenced his inability to hold down a job. *Id.* 771 F.Supp. at 284.