Syed I. GHAZI and Syeda
Ghazi, Plaintiffs,

v.

FISERV, INC. and Unum Life Insurance
Company of America, Defendants.

No. 95 C 0258.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 7, 1995.

824

Robert Dean Greenwalt, West Chicago, IL, for plaintiffs.

Mary Patricia Benz, Catherine J. Casey, Phelan, Cahill, Devine & Quinlan, Ltd., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Defendants, Fiserv, Inc. ("Fiserv") and UNUM Life Insurance Company of America ("UNUM"), have filed a motion for summary judgment on the complaint filed by plaintiffs, Syed and Syeda Ghazi.[1] For the reasons stated below, the defendants' motion is granted.

### Background

On November 29, 1994, the Ghazis filed suit in state court, alleging that Fiserv and UNUM had wrongfully refused to allow Mr. Ghazi to convert his employer-furnished group life insurance coverage to a personal life insurance policy. The Ghazis sought an order commanding defendants to provide them with a personal life insurance policy. On January 13, 1995, Fiserv and UNUM removed the action to this court, pursuant to 28 U.S.C. § 1441, on the basis of federal question jurisdiction under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. (1985 & Supp.1995) ("ERISA").[2] Defendants now move for judgment pursuant to Rule 56, FED.R.CIV.P., claiming that Mr. Ghazi lost the right to convert his group insurance coverage to a personal policy by failing to do so within the requisite time period.

Prior to July 8, 1994, Mr. Ghazi was employed by defendant Fiserv. While employed by Fiserv, Mr. Ghazi received specific medical and life insurance benefits under an employee welfare benefit plan. The life insurance benefits were provided by defendant UNUM. UNUM has issued a group life insurance policy to Fiserv for the benefit of its eligible employees. When an employee is terminated from employment with Fiserv, he

1. Mr. Ghazi died on January 9, 1995. Mr. Ghazi's estate has not been substituted as a plaintiff. Accordingly, Syeda Ghazi is the sole remaining plaintiff.

2. ERISA defines an employee welfare benefit plan, in pertinent part, as "any plan ... estab-

lished or maintained by an employer ... for the purpose of providing ... participants or their beneficiaries, through the purchase of insurance ... benefits in the event of ... death." 29 U.S.C. § 1002(1)(A). The plan in this case fits this definition.

or she is no longer covered under the group policy. The terminated employee may, however, obtain a personal life insurance policy without evidence of insurability. Under the terms of Fiserv's group policy, a terminated employee has thirty-one days from the date of termination to convert the now-expired group policy to a personal policy. If an employee becomes "totally disabled" within the meaning of the policy before being terminated, the policy does not require the terminated employee to convert to a personal policy. Instead, the group coverage automatically continues for the duration of the disability.

As an employee, Mr. Ghazi was covered by the UNUM group policy and was given a copy of Fiserv's employee benefit book. This book details the terms of the policy and includes a section titled "Life Insurance Conversion Rights." This section explains the conversion process and its 31–day time limit.

Mr. Ghazi was terminated from his employment on July 8, 1994. On July 16, 1994, he received a letter informing him of his rights regarding, *inter alia,* the conversion of his group life insurance coverage to a personal policy.

Mr. Ghazi did not contact either Fiserv or UNUM about converting his group life insurance coverage to a personal policy within the 31–day period. Mr. Ghazi sent a letter to UNUM, dated September 10, 1994 and received on October 14, 1994, requesting the necessary conversion forms and enclosing an estimated premium. In his letter requesting continuation of his life insurance, Mr. Ghazi did not provide his termination date. UNUM did not, therefore, immediately inform Mr. Ghazi that his conversion period had expired, but instead responded by mailing him a conversion application. The cover letter to the application informed Mr. Ghazi that his group insurance policy gave him only 31 days from the date of his employment termination to convert to a personal policy. The letter then erroneously informed Mr. Ghazi that he had until November 9, 1994, to return his application.

UNUM received Mr. Ghazi's completed application for conversion and the appropriate premium on November 4, 1994. On November 10, 1994, UNUM rejected Mr. Ghazi's application because he had not filed it within the requisite 31 days from expiration of his group coverage. On November 15, 1994, Mr. Ghazi had a brain tumor surgically removed. On November 29, 1994, the Ghazis filed this action.

### Expiration of the Conversion Period

■ Mr. Ghazi was terminated from his employment with Fiserv on July 8, 1994. Therefore, under the terms of Fiserv's group life insurance policy, he had until August 8, 1994 to convert his coverage to a personal policy. Mr. Ghazi's first contact with UNUM regarding this conversion right was by letter dated September 10, 1994.[3] Because he did not comply with the terms of his policy, Fiserv and UNUM do not need to provide the Ghazis with conversion coverage. *Howard v. Gleason Corp.,* 901 F.2d 1154 (2d Cir.1990) (affirming summary judgment for defendant insurer when insured failed to convert to a personal policy within requisite 31 days); *Butler v. MFA Life Ins. Co.,* 591 F.2d 448 (8th Cir.1979) (granting summary judgment for insurer where insured failed to convert his group life insurance to a personal policy within the 31 days required by the policy).

Mrs. Ghazi argues that this rule should not apply to this case for two reasons. First, she points to an Illinois statutory notice requirement, which she contends was not satisfied. The statute extends the 31–day period in those instances in which an employee is not given notice. Second, she alleges that Mr. Ghazi became totally disabled before his life insurance expired. Mrs. Ghazi argues that she is entitled to a continued life insurance policy under the life disability benefits provision of Fiserv's group policy.

### Illinois Statutory Notice Requirement

Mrs. Ghazi's argument in support of an extension of the 31–day conversion period is

---

**3.** In reaching my decision, I do not address whether Mr. Ghazi needed to *complete* his application for conversion within the 31 days, or merely indicate an intent to convert within the 31 days. I simply assume that this letter provides the appropriate point at which to judge timeliness of the conversion.

based on 215 ILCS 5/231.1(H)(4).[4] That statute provides:

> If any individual insured under a group life insurance policy becomes entitled under the terms of such policy to have an individual policy of life insurance issued and if such individual is not given notice of the existence of such right at least 15 days prior to the expiration date of such period, then in such event the individual shall have an additional period within which to exercise such right.... This additional period shall expire 15 days next after the individual is given such notice but in no event shall such additional period extend beyond 60 days next after the expiration date of the period provided in such policy.

■ The defendants say that Mr. Ghazi had adequate notice of his right to convert to a personal life insurance policy for several reasons. First, they point to the group policy and Fiserv's employee benefits handbook explaining that policy. Defendants argue that because both the policy and handbook clearly explain the conversion right, Mr. Ghazi had notice of this right. In Illinois, Mr. Ghazi is charged with knowledge of the terms of his insurance policy. *Gabler v. Minnesota Mutual Life Ins. Co.*, No. 92 C 8256, 1993 WL 433703 * *4 (N.D.Ill. October 21, 1993) (citing *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill.2d 522, 322 N.E.2d 454, 457 (1975)). Because Mr. Ghazi received his employee benefits handbook explaining his conversion right more than 15 days before the August 8th expiration of his conversion right, Fiserv has complied with the Illinois statute.

Additionally, defendants point to Fiserv's July 14th letter to Mr. Ghazi, which explained his conversion right. Mr. Ghazi received this letter on July 16, 1994, which was "at least 15 days prior to the expiration date of [his conversion] period." 215 ILCS 5/231.1(H)(4).

Mrs. Ghazi argues that this letter does not fulfill the statutory requirement because, although it explains the conversion right, it does not mention its 31-day time limit. The defendants concede that the letter does not provide the time limitation, but assert that they enclosed a conversion application with the letter. UNUM's conversion application warns in bold letters that the policy holder has only 31 days from the date of termination to convert the policy. Mrs. Ghazi contends that the conversion application was not included with Fiserv's letter.

In their statement of facts, defendants declare that a packet of information containing the conversion application was included with the cover letter. They support this assertion with the affidavit of Lisa Ketchersid, a Fiserv employee, in which she states that she included the packet with the letter. Plaintiff's "response" is that "it *is disputed* that the conversion form was actually enclosed [with the letter]." Plaintiff's Rule 12 Statement of Facts (emphasis in original). Plaintiff supports this statement by citing to the affidavits of Mrs. Ghazi and Khawaja Afzal. In her affidavit, Mrs. Ghazi states that she "never saw the Life Insurance Conversion Notification of Conversion Privilege form [and that she] depended upon [her] husband, SYED GHAZI, to complete all technical matters such as completing insurance company forms." In his affidavit, Mr. Afzal states that it is "[Mrs. Ghazi's], and my, position that neither the conversion form nor the 'Notification of Conversion Privilege' form were included in the correspondence which Mr. Ghazi received after he was terminated." Mr. Afzal explains that this knowledge is based on the fact that he "assisted Mr. and Mrs. Syed Ghazi in their affairs in the later portions of Mr. Ghazi's life[,] helped Syeda Ghazi with the paperwork[, and] have reviewed the procedure they followed for conversion of the life insurance."

■ Defendants have filed a motion to exclude these affidavits, citing several flaws

---

4. Although defendants have removed this case to federal court claiming federal question jurisdiction under ERISA, they do not contend that this Illinois statute is preempted by ERISA. The issue of ERISA preemption of this statute is not obvious. *Compare Henkin v. Northrop Corp.*, 921 F.2d 864 (9th Cir.1990) (California statute governing conversion of group life insurance to personal policy is not preempted by ERISA.), *with Howard, supra,* 901 F.2d 1154 (New York statute governing conversion of group life insurance to personal policy is preempted by ERISA.).

in them. First, the two affidavits are not properly notarized. Although they are signed by two different people each purporting to be a notary public, neither notary public has stated when his commission expires or in which state he is a registered notary public. More importantly, neither affidavit is embossed with the appropriate notary's seal. 5 ILCS 312/6–103 (1993). This court may not disregard an improperly notarized affidavit if it otherwise satisfies the criteria of 28 U.S.C. § 1746.[5] *See Pfeil v. Rogers,* 757 F.2d 850, 858–9 (7th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). In this case, these affidavits do not comply with the requirements of § 1746 because neither affiant states that he or she declares the contents of the affidavit to be true under the penalty of perjury.

▪ Even if the affidavits met the requirements of 28 U.S.C. § 1746, however, they do not sufficiently respond to the affidavit of Lisa Ketchersid, the Fiserv employee who sent Mr. Ghazi the July 14th letter. Ms. Ketchersid swears that she enclosed the conversion application with the letter. The fact that Mrs. Ghazi never saw the application, or that it is "the position" of her and Mr. Afzal that the form was not included with the letter does not contradict Ms. Ketchersid's sworn statement. Neither Mrs. Ghazi nor Mr. Afzal assert that they have personal knowledge of the contents of the July 14th letter, as is required by Rule 56. For example, Mrs. Ghazi does not claim that it was she who opened the envelope and therefore she knows that the conversion form was not enclosed. Neither does Mr. Afzal. Mrs. Ghazi admits that she left insurance matters to her husband, and Mr. Afzal explains only that he reviewed the conversion process with the Ghazis. Thus the record contains no evidence to contradict defendants' evidence that Mr. Ghazi was sent a letter on July 14, 1994, explaining a conversion application, explicitly notifying him that he had only 31 days from the date of his termination to convert his policy.

▪ Plaintiff also argues that UNUM should be bound by its erroneous statement that Mr. Ghazi had until November 9, 1994 to convert to a personal policy and estopped to reject his application. "Estoppel is based upon an insurer's conduct or representations which mislead an insured to his detriment." *Essex Ins. Co., supra,* 14 F.3d at 1182. Because Mr. Ghazi did not receive the erroneous November 9th date until after his September 10th letter to UNUM, when his conversion period had already expired, he could not have relied on that date. He was therefore not misled to his detriment.

### *Incapacitation*

▪ Mrs. Ghazi also argues that summary judgment should not be granted for the defendant because Mr. Ghazi was disabled at the time of his termination and therefore his life insurance should have continued beyond his termination date under the group policy. Fiserv's insurance policy does include a "Life Disability Benefit" provision under which an employee's life insurance coverage will continue beyond his or her termination in the event of disability. It requires the policy holder to, *inter alia,* become "totally disabled" while still insured. "Totally disabled" is defined by both the Group Policy and the employee benefits handbook to mean that "the employee is unable to perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience."

Mrs. Ghazi did not seek benefits under the disability continuation of the group policy in her complaint. She raised the question of Mr. Ghazi's disability for the first time in her response to defendants' motion for summary judgment. Defendants responded to the claim as raised in the response, however. Accordingly, I will consider it.

As support for her argument, Mrs. Ghazi submits the affidavit of Dr. Tomasz Helenowski, who operated on Mr. Ghazi shortly before his death. Dr. Helenowski states that he "feel[s] that based on the size of the lesion and its location, Mr. Ghazi's ability to func-

---

**5.** 28 U.S.C. § 1746 allows an unsworn statement to be used in place of an affidavit if it states "in writing of such person which is subscribed by him, [that the writer warrants it to be] true under penalty of perjury."

tion, recall instructions, do research, and make reasonable decisions would be greatly impaired or impossible due to the tumor, even on July 8, 1994, the date Mr. Ghazi was fired for failing to come to work. [He] feel[s] that [Mr. Ghazi] was probably fired because of his inability to function caused by the tumor which was growing at that time."

To contradict Dr. Helenowski's affidavit defendants offer the affidavit of Tom Immer, Mr. Ghazi's immediate supervisor. Mr. Immer details the exact functions performed by Mr. Ghazi on his last day of work on June 22, 1994. He further explains that when Mr. Ghazi stopped showing up for work he repeatedly attempted to contact him, but Mr. Ghazi did not return his telephone calls. According to Mr. Immer, Mr. Ghazi was fired for failing to show up for work, after being warned that if he did not respond to his employer's attempt to reach him, he would be terminated. Mr. Immer testified that Mr. Ghazi was not fired for improperly performing his job.

To be eligible for benefits under the "Life Disability Benefit" provision of the Group Policy, the employee must provide written notice and proof of total disability within one year from the date the total disability started. Plaintiffs have not identified the date when Mr. Ghazi's disability began. Clearly, however, if they are saying he stopped showing up for work because of his disability, the latest date could be his last day of work, June 22, 1994. Plaintiff's response to the motion for summary judgment, in which she first raised the issue of Mr. Ghazi's disability, was filed June 26, 1995. That is more than one year from the last day on which Mr. Ghazi arguably could have become disabled under the undisputed facts of this case. Since plaintiff did not notify defendants of Mr. Ghazi's alleged disability within one year of the onset of his disability, Mr. Ghazi was ineligible for continued life insurance under this provision.[6] *See Jordan v. John Hancock Mutual Life Ins. Co.*, 222 F.2d 210, 214 (7th Cir.1955) ("[W]here the policy in express

terms makes the giving of notice a condition precedent, a failure to comply with the terms of the policy will bar recovery.").

In summary, Mr. Ghazi did not comply with the terms of his insurance policy by exercising his right to convert to a personal policy within the requisite time period. The defendant's motion for summary judgment is therefore granted.

---

6. According to its employee benefits handbook, Fiserv waives the one-year requirement of proof of disability in cases in which the insured dies within the one-year period and before giving proof of disability to Fiserv. Thus the Ghazis need not have proven Mr. Ghazi's disability within the one-year period. They must, however, still have provided notice within the one-year period, which they failed to do.