Clark Ray **HELMS** and Betty Helms, **Plaintiffs-Appellants,**

v.

**MONSANTO COMPANY, INC.,** a **Corporation, Defendant-Appellee.**

No. 83–7130.

United States Court of Appeals, Eleventh Circuit.

April 6, 1984.

Rehearing and Rehearing En Banc Denied May 16, 1984.

Stephen J. Pettit, Birmingham, Ala., for plaintiffs-appellants.

Arthur L. Smith, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for defendant-appellee.

Before FAY and HENDERSON, Circuit Judges, and BOYLE *, District Judge.

FAY, Circuit Judge:

Clark Ray Helms brought a declaratory judgment action in the United States District Court for the Northern District of Alabama claiming that his employer, Monsanto Company, had wrongfully denied him disability benefits. A third-party arbitrator had concluded that Mr. Helms was not totally and permanently disabled under the terms of the policy. Based on the arbitrator's conclusions, the district court found that Monsanto had properly denied Mr. Helms the benefits. We find that the arbitrator acted arbitrarily and capriciously in applying an incorrect standard to determine whether the appellant was totally and permanently disabled. We reverse 558 F.Supp. 928 and remand for further consideration consistent with this opinion.

FACTS

Appellant, Clark Ray Helms, had been an employee of Monsanto since 1965, working as the chief lab technician at Monsanto's chemical laboratory in Decatur, Alabama. Among the fringe benefits Monsanto provides for its employees is a Disability Income Plan ("DIP"), which protects employees who become either temporarily or permanently disabled.[1] In 1980, Mr. Helms developed vision problems. After consulting several ophthalmologists they all diagnosed retinitis pigmentosa,[2] a hereditary,

---

* Honorable Edward J. Boyle, Sr., U.S. District Judge for the Eastern District of Louisiana, sitting by designation.

1. Mr. Helms collected total and temporary disability benefits from Monsanto and those are not at issue in this case.

2. Generally, retinitis pigmentosa is a hereditary disease of the retina which is marked by a slowly progressive withering of the nerve cells, a deterioration of blood vessels and a wasting of the optic disk. It is marked by a constriction of the field of vision.

incurable eye disease which inevitably leads to total blindness. In May, 1980, appellant was unable to continue working at Monsanto and he submitted to the company his "Statement of Claim for Disability Benefits" as provided for in DIP, claiming that as a result of retinitis pigmentosa he was totally and permanently disabled within the terms of the plan and therefore entitled to benefits.[3]

Upon receipt of his claim, the Employee Benefits Plan Committee, which administers DIP, referred the matter to Monsanto's medical department. After examining Mr. Helms and reviewing the reports from several of his doctors, the Monsanto medical department concluded that appellant was not totally and permanently disabled within the plan definition. According to DIP's terms:

> An eligible employee shall be deemed to be Totally and Permanently Disabled only when and during the period that it is determined by the Corporation's Department of Medicine and Environmental Health solely on the basis of medical evidence furnished to the Corporation from time to time that: 1) he is totally disabled and continues to be totally disabled by reason of bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit (as determined by the Corporation); 2) his condition of disability has existed continuously for not less than six consecutive months; and 3) his condition of total disability is presumed to be permanent during the remainder of his life. It must also be determined that 1) his condition of total disability did not result from i) any service for another employer, including service in the Armed Forces of any country, or from activity other than employment with the Employ-

er pursued for remuneration or profit on a full-time, part-time, temporary or permanent basis; ii) warfare or acts of the public enemy; iii) participation in any criminal or unlawful act; or iv) willful misconduct; and 2) he has not attained his 65th birthday.

Helms did not agree with the company's conclusion.

DIP specifies the procedure to be followed when there is a disagreement between the corporation and the employee on disability. DIP provides:

> In the event of an unresolved disagreement between the Corporation and an employee as to whether the employee is Totally and Permanently Disabled, the employee shall be examined by the licensed medical practitioner or practitioners jointly selected by the Corporation and the employee, and the decision of such licensed medical practitioner or practitioners so jointly selected shall be binding on the Corporation and the employee. The fees and expenses of the medical practitioner or practitioners so jointly selected shall be shared equally by the Corporation and the employee. Before making a decision, the medical practitioner or practitioners so jointly selected may consult and confer with the medical practitioners who previously examined the employee at his request or at the Corporation's request. No such examination and determination shall be made more often than semi-annually.

Therefore, in accordance with the Plan, Monsanto and appellant jointly selected a third-party medical expert, Dr. Harold Skalka, to arbitrate their differences regarding the extent of appellant's disability.[4] Pursuant to the terms of the Plan, Helms and Monsanto agreed that Dr. Skalka's decision would be binding on both of them.

---

3. Mr. Helms was not permitted to return to work at Monsanto because they didn't have any work that he could do at the chemical laboratory. R. Vol. 2, p. 17.

4. Monsanto's Employee Benefits Plan Committee is the trustee in charge of administering DIP. The Labor Department's ERISA regulations clearly state that a trustee may designate

a person to review a participant's denied claim. 29 C.F.R. § 2560.503–1(g)(1) (1981). The designation of Dr. Skalka as arbitrator in this case was a proper delegation of the Employee Benefits Plan Committee's fiduciary duties. See, Sample v. Monsanto, 485 F.Supp. 1018 (E.D. Mo.1980).

On February 18, 1982, Dr. Skalka examined appellant for approximately two hours and reviewed the medical reports of other doctors who had examined him. Dr. Skalka concluded that appellant indeed had retinitis pigmentosa and that he "would be unable to engage in an occupation or employment that requires any degree of visual performance." R. Ex. Defendant's Exhibit X. Monsanto considered Dr. Skalka's report ambiguous and requested clarification. To accomplish this, Monsanto and Mr. Helms submitted a new letter to Dr. Skalka which included a portion of the DIP definition of total and permanent disability. Dr. Skalka was to apply this definition to Mr. Helms' condition and indicate whether or not he found Mr. Helms disabled under the Plan. Dr. Skalka, applying his interpretation of the definition, concluded that Mr. Helms was not totally and permanently disabled from engaging in any occupation for remuneration or profit and therefore was not disabled under DIP. Based on this decision Monsanto denied appellant's claim for disability benefits. Mr. Helms then filed his action for declaratory judgment in the district court.

Dr. Skalka's deposition was taken in November, 1982, in preparation for trial. He was asked by appellant's counsel to explain his reasoning as to why he concluded that Mr. Helms was not totally and permanently disabled. He responded:

> Well, I felt that Mr. Helms was certainly disabled, but, according to that definition, with that word, 'any occupation or employment for remuneration or profit,' I really couldn't think of any disability compatible with conscious life that would allow me to say anybody was 'disabled within the definition set out above,' so I had to sign it, 'Not disabled within the definition.'

Skalka's Deposition at 21–22.

The district court concluded that Dr. Skalka did not act arbitrarily and capriciously in reaching his decision and therefore Monsanto had properly denied Mr. Helms the benefits. The sole issue before this court is whether the arbitrator was arbitrary and capricious in finding that appellant was not disabled because permanent total disability is inconsistent with conscious human life. We find that the arbitrator applied the wrong standard to determine permanent total disability and therefore reverse and remand for further proceedings consistent with this opinion.

## HELM'S ELIGIBILITY FOR A DISABILITY BENEFIT

Disability provisions provide protection against loss of capacity to work and not against loss of income. *Metropolitan Life Insurance Co. v. Pitcher,* 108 F.2d 621 (5th Cir.1939), *cert. denied,* 310 U.S. 640, 60 S.Ct. 1087, 84 L.Ed. 1408 (1940). There are two types of total disability provisions, "occupational disability provisions" and "nonoccupational, or general, disability provisions." The occupational type requires that the individual only be unable to perform the duties of his particular occupation in order to be considered "totally disabled" and recovery would not be barred if he is able to pursue other occupations. Nonoccupational or general disability clauses, on the other hand, require that the individual be unable to perform the duties of any occupation. A typical example of a nonoccupational provision is Monsanto's provision in this case. According to the Plan, in order to be considered totally and permanently disabled, the employee must show that he is prevented "from engaging in any occupation or employment for remuneration or profit."

DIP is an employee welfare benefit plan as defined in Section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1002(1)(A) (1980). Section 514 of ERISA, 29 U.S.C. § 1144, provides that the act shall supersede any and all state laws that pertain to any employee benefit plan. The language in § 1144 is broad, indicating Congress' intent to preempt the entire field of law involving employee benefit plans subject to ERISA. Section 514(c)(1) of ERISA, 29 U.S.C. § 1144(c)(1), defines state law to include all laws, decisions, rules, regulations or other state action having the effect of

law in any state. Thus, not only statutory law is preempted, but also case law which is contrary to any provision of ERISA.

There is no particular provision in ERISA nor could we find any federal case which specifically dealt with the issue presented here. However, under ERISA's legislative scheme, this court is empowered to formulate rules of law to govern various aspects of the employee benefit field. As Congress pointed out, "[I]t is also intended that a body of law will be developed by the courts to deal with the issues involving rights and obligations under private welfare and pension plans." 120 Cong.Rec. 515, 751 (daily ed. August 22, 1974). Yet, in formulating these laws courts must be guided by the general policies underlying ERISA. The general objective of this Act is to increase the number of individuals in employer-financed benefit plans. Congress wanted to assure that those who participate in the plans actually receive the benefits they are entitled to and do not lose these as a result of unduly restrictive provisions or lack of sufficient funds. H.R.Rep. No. 93–807, 93rd Cong., 2nd Sess. 3, *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4670, 4676–77.

■ Total disability under this type of provision is not considered to exist if the insured can follow any remunerative occupation, whether in his present vocation or another. The phrase should not be given an absolute and literal interpretation. It should not mean that the affected individual must be utterly helpless to be considered disabled. It must be a relative term which means that the individual is unable to engage in a remunerative occupation or to do work in some profitable employment or enterprise. Permanent disability is a question of fact that depends upon all the circumstances of a particular case. Bearing this in mind, we turn to the arbitrator's construction of the clause in this case.

■ Dr. Skalka's decision must be upheld on review unless it is arbitrary and capri-

cious. *Sharron v. Amalgamated Ins. Agency Services, Inc.,* 704 F.2d 562, 564 (11th Cir.1983); *Bayles v. Central States, Southeast and Southwest Areas Pension Fund,* 602 F.2d 97, 99 (5th Cir.1979).[5] Dr. Skalka's interpretation of the DIP was arbitrary and capricious. By his own words, a finding of permanent disability would only be possible if the individual had no "conscious life." Such a standard would render the entire Monsanto DIP totally meaningless. Recognizing this is a difficult area, we will set forth the appropriate standard.

In order to determine when a Monsanto employee will be considered to be totally and permanently disabled under the provisions of the DIP we must define the phrase "any occupation or employment for remuneration or profit." It is difficult to do this because a person would almost never be deprived of the ability to earn a nominal sum unless he is rendered completely immobile and without any cognitive ability. In order to establish a reasonable interpretation of this phrase we turned for guidance to insurance policies with similar provisions and to cases construing the Social Security disability provisions.

■ Analogous insurance cases consistently agree that the term "total disability" does not mean absolute helplessness on the part of the insured. The insured can recover benefits if he is unable to perform all the substantial and material acts necessary to the prosecution of some gainful business or occupation. Gainful has been defined by these courts as profitable, advantageous or lucrative. Therefore, the remuneration must be something reasonably substantial rather than a mere nominal profit. *See, e.g., Russell v. Prudential Insurance Company of America,* 437 F.2d 602, 605 (5th Cir. 1971); *General American Life Insurance Company v. Yarbrough,* 360 F.2d 562, 565 (8th Cir.1966); *Smith v. Mutual Life Insurance Co. of New York,* 165 So. 498, 500 (La.App.1936); *Protective Life Ins. Co. v.*

---

**5.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding upon this court unless and until they are overruled by the Eleventh Circuit sitting *en banc. Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

*Wallace,* 230 Ala. 338, 161 So. 256, 259 (1935).[6]

Social Security cases dealing with disability provisions have followed a parallel path.[7] It is clear that the standard for disability under the Social Security Act is a stringent one.[8] The applicant must be unable to engage in "any ... substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A) (1980). As the Fifth Circuit has pointed out, the showing required of the claimant is "so stringent that it borders on being unrealistic." *Laffoon v. Califano,* 558 F.2d 253, 256 n. 6 (5th Cir.1977), *quoting, Williams v. Finch,* 440 F.2d 613, 615 (5th Cir.1971).

Yet in spite of its strictness the Social Security Act's requirements for disability are framed in terms of gainful employment and not just nominal employment. *See, e.g., Campbell v. Secretary of Dept. of Health and Human Services,* 665 F.2d 48 (2d Cir.1981), *rev'd on other grounds sub nom, Heckler v. Campbell,* —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Brenem v. Harris,* 621 F.2d 688 (5th Cir.1980); *Markham v. Califano,* 601 F.2d 533 (10th Cir.1979); *King v. Finch,* 428 F.2d 709 (5th Cir.1970). In *Hill v. Califano,* No. 78–1235, an unpublished decision by the Tenth Circuit filed May 30, 1979, *quoted* in *Markham v. Califano,* 601 F.2d at 534, the court held

that substantial gainful activity means performance of *substantial* services with reasonable regularity, either in competitive or self-employment. (emphasis added). Thus, it is obvious that courts do not insist upon a state of being not consistent with conscious life as a condition precedent for recovery under very similar disability clauses.

Common knowledge of the occupations in the lives of men and women teach us that there is scarcely any kind of disability that prevents them from following some vocation or other, except in cases of complete mental incapacity. Although the achievements of disabled persons have been remarkable, we will not adopt a strict, literal construction of such a provision which would deny benefits to the disabled if he should engage in some minimal occupation, such as selling peanuts or pencils, which would yield only a pittance. The insured is not to be deemed "able" merely because it is shown that he could perform some task.

Neither will we adopt the definition used by the arbitrator in this case. He believed that anyone alive and conscious would not qualify for benefits under the Monsanto plan. The word disability is not ordinarily used to describe death, although death is undeniably the ultimate disability.

To bar recovery, under the provisions of the DIP, the earnings possible must approach the dignity of a livelihood. Mr. Helms is required to show physical inability to follow any occupation from which he could earn a reasonably substantial income

---

**6.** Although these cases were all construing state law which is not applicable to plans covered by ERISA we are not using them as precedent but rather as examples of different courts' interpretation of these provisions.

**7.** Section 423(d)(1)(A) provides that the term disability means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

42 U.S.C. § 423(d)(1)(A) (1980).

**8.** The requirements of the Social Security Act are considerably more stringent than other acts. The Black Lung Benefits Act; for example, requires that the Secretary's regulations "shall not provide more restrictive criteria than those applicable under Section 423(d) of Title 42 [the Social Security Act]." 30 U.S.C. § 902(f) (1969).

The Longshoremen's and Harbor Workers' Compensation Act's disability provision, 33 U.S.C. § 908(c) (1957) has been construed by the courts to mean "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment...." *Washington Terminal Co. v. Hoage,* 65 App.D.C. 33, 79 F.2d 158 (1935).

rising to the dignity of an income or livelihood, even though the income is not as much as he earned before the disability. *See, e.g., Mutual Life Ins. Co. v. Bryant,* 296 Ky. 815, 177 S.W.2d 588 (1943). The arbitrator in this case applied the wrong standard. We reverse and remand so that the arbitrator can allow development of all appropriate evidence for consideration under the correct standard.

REVERSED and REMANDED for further consideration consistent with this opinion.