Nezmije DEMIROVIC, Plaintiff–
Appellant,

v.

BUILDING SERVICE 32 B–J PENSION
FUND and the Board of Trustees of
the Building Service 32, Defendants–
Appellees.

Docket No. 05–6914–cv.

United States Court of Appeals,
Second Circuit.

Argued: Aug. 7, 2006.

Decided: Oct. 19, 2006.

Aba Heiman, Fusco, Brandenstein & Rada, PC, Woodbury, NY, for Plaintiff–Appellant.

Michael Geffner, Raab Sturm & Goldman, LLP, New York, NY, for Defendants–Appellees.

Before STRAUB, POOLER, and SACK, Circuit Judges.

STRAUB, Circuit Judge.

Plaintiff–Appellant Nezmije Demirovic ("Demirovic") appeals from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*), dismissing her claim for disability benefits. Demirovic argues that the denial of her employer-sponsored disability benefits by Defendant–Appellee Building Service 32B–J Pension Fund ("the Fund") violates ERISA. We agree with the District Court that the deferential arbitrary and capricious standard applies to our review of the Fund's decision. However, because we conclude that the Fund failed to conduct a full and fair review of all of the circumstances relevant to plaintiff's claim of disability, we vacate and remand for further proceedings consistent with this opinion.

## BACKGROUND

### I.  The Facts

Demirovic filed her claim for disability pension benefits in September 2003. At that time, she was fifty-five years old, and had worked as a night cleaner for some thirty years. She was a member of Local 32B–J, and fully vested for benefits available through the Fund. The benefits provided by the Fund include a monthly pension payment to participants who suffer from a "[t]otal and permanent disability." The Fund's Summary Plan Description ("SPD") explains that:

> Total and permanent disability is the inability to work in any capacity, as determined in the discretion of the Trustees or persons they designate. You will not satisfy this definition of total and permanent disability just because you are unable to continue working at your usual occupation; you must be unable to perform any gainful employment

to be considered totally and permanently disabled under this Plan.[1]

On her application for benefits, Demirovic indicated "pain and swelling on right knee due to osteo-[arthritis]." She also submitted a form completed by her attending physician, Dr. Victor Sasson, which stated that Demirovic had had a "total knee replacement," and was "totally disabled." Her application was also accompanied by a Notice of Award from the Social Security Administration granting her Social Security disability payments.

The Fund referred Demirovic to an outside specialist, Dr. Edward A. Toriello, for disability evaluation. The Fund informed Dr. Toriello that his services had been "retained ... to determined whether the above-referenced participant is totally and permanently disabled as a result of his [sic] condition." The Fund further explained that:

> Pursuant to the rules and regulations of the Fund, a person is totally disabled if "as a result of illness or injury, [he/she is] *unable to work in any capacity.*" The following criteria should be considered when determining whether this patient is disabled as defined by our standards:
>
> 1. Is this individual *totally* disabled?
> 2. Can the individual perform *any* gainful employment?

(emphasis and brackets in original; quotation marks omitted).

Dr. Toriello found that Demirovic had a limited range of motion in her right knee,

amounting to "a temporary moderate partial disability." On the form provided by the Fund, he indicated that she was able to sit for "[a]bout 8 hours" in a day, though she was able to stand or walk for "[l]ess than 2 hours," and was able to walk no more than one city block "without rest or severe pain." He felt that "she [was] presently able to work in a sedentary capacity."

On February 9, 2004, the Fund denied Demirovic's claim on the basis of Dr. Toriello's conclusion that she was able to work in a sedentary capacity. Demirovic appealed the denial. The Fund referred her to another physician, Dr. Andrew D. Brown, who examined her on September 20, 2004. Dr. Brown noted that, in addition to her knee pain, Demirovic complained of numbness in her hands and pain in her shoulders; his report concentrated, however, "only" on her knee impairments, because her other complaints were "present prior to her stopping working, and were not the reason for her inability to perform her work duty as per the documentation provided." He found that she had "impaired" mobility, and was "able to perform sedentary work only," and even then only "limited to six hours per day." Dr. Brown further noted that "[t]he ability to perform sedentary work is based on her physical examination only. It does not take into account her education nor work skills or any other diagnoses that would preclude her from performing work duties."

---

1. The language of the Fund's plan differs in some respects from that used in the SPD. *See infra,* pp. 213. As the Fund conceded below, to the extent that there is a conflict, the language of the SPD controls. *See Burke v. Kodak Ret. Income Plan,* 336 F.3d 103, 110 (2d Cir.2003), *cert denied,* 540 U.S. 1105, 124 S.Ct. 1046, 157 L.Ed.2d 890 (2004). This is because the SPD—which, pursuant to ERISA, employers are required to distribute to their employees, *see* 29 U.S.C. §§ 1022(a) & 1024(b)—"will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd v. Olin Corp.,* 906 F.2d 903, 907 (2d Cir.1990).

On October 22, 2004, Demirovic's counsel received her file, containing Dr. Brown's findings. Demirovic promptly submitted new medical evidence from her doctor, Dr. Sasson, and four other doctors. Dr. Sasson stated that Demirovic, due to her knee impairments, "would be unable to perform [a] sedentary job on a prolonged sustained basis." Dr. Albert Benchabbat stated that Demirovic suffered from diabetic neuropathy and retinopathy, which, *inter alia,* would prevent her from standing for more than two hours in a typical work day, or sitting for more than four. He "advise[d] her against resuming any kind of work." Dr. Jorge Rinsky, a psychiatrist, stated that Demirovic suffered from "low mood, anhedonia, insomnia, tenseness, tiredness, lack of energy and lack of drive" and "present[ed] poor concentration and slow mentation."

The Fund's Appeals Committee heard Demirovic's appeal on December 7, 2004. No record was made of the proceedings. By letter dated December 13, 2004, the Fund informed Demirovic that her appeal had been denied, on the basis of Dr. Toriello's and Dr. Brown's reports, and following review of her entire file, including the letters from Dr. Sasson, Dr. Benchabbat, Dr. Rinsky, and her other doctors.

On March 4, 2005, Demirovic filed a complaint against the Fund in the United States District Court for the Southern District of New York, alleging that the Fund's decision to deny her disability benefits violated ERISA. The District Court, finding that the Fund had not acted arbitrarily or capriciously in determining that Demirovic was not disabled, granted defendant's motion for summary judgment. This appeal followed.

## DISCUSSION

### I. Standard of Review

We review the District Court's grant of the Fund's motion for summary judgment under a *de novo* standard. *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1269 (2d Cir.1995).

■ The first question before us is whether, as Demirovic argues, the District Court erred in applying a deferential arbitrary and capricious standard of review to the Fund's denial of benefits. The Plan and the SPD contain language expressly conferring discretionary authority upon the Fund's Trustees. Demirovic concedes that, ordinarily, this language would be sufficient to secure deferential review in favor of the Fund. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, Demirovic argues that, because the Fund failed to make its initial determination on her claim within forty-five days of receipt, as required by 29 C.F.R. § 2560.503–1(f)(3), promulgated pursuant to ERISA, we must review her claim *de novo.*

Demirovic relies on *Nichols v. Prudential Ins. Co. of Am.,* 406 F.3d 98 (2d Cir. 2005). In *Nichols,* the plaintiff's insurer had delayed a final decision on her appeal from her initial denial of benefits past the 60–day deadline for deciding appeals imposed by 29 C.F.R. § 2560.503–1(i)(1)(i). Rather than wait for her insurer to decide the appeal, Nichols went directly to federal court. We held that her claim was "deemed denied" as a result of the insurer's inaction, and that her administrative remedies had therefore been exhausted. *Nichols,* 406 F.3d at 104. We instructed the district court to apply *de novo* review to her claim, on the ground that "we may give deferential review only to actual exercises of discretion.... A 'deemed denied' claim is not denied by any exercise of discretion, but by operation of law...." *Id.* at 109.

In *Nichols*, the insurer's inaction "le[ft] the court without any decision or application of expertise to which to defer."[2] *Id.* Here, by contrast, rather than go directly to court when the Fund failed to issue a timely initial determination, Demirovic chose to appeal. She then waited for and received a timely decision on her appeal.[3] This eventual decision constitutes a final decision and exercise of the Fund's discretion, to which we must defer. Accordingly, we will apply arbitrary and capricious review to the Fund's determination.

■ Under that standard, we may overturn a denial of benefits "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir.2000) (quotation marks and citation omitted). "Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Ben. Plan*, 698 F.2d 593, 601 (2d Cir.1983).

However, for the reasons given below, we find—notwithstanding this deferential posture—that the Fund's determination appears to have been based at least in part on an unreasonable interpretation of the SPD's provisions, and that the Fund therefore failed to give a full and fair review to Demirovic's claim.

## II. The Merits of Demirovic's Claim

Demirovic challenges the Fund's decision on two broad grounds. First, Demi-

rovic argues that the Fund, in relying on the findings of Drs. Toriello and Brown to determine that she was physically capable of sedentary work, arbitrarily failed to consider the contrary findings made by her own doctors. We are not persuaded.

■ ERISA requires that benefit plans give a "full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). To fulfill this requirement, a plan need not accord the insured's treating physician greater deference than a plan's retained physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). Although plan administrators may not "arbitrarily refuse" to credit the reliable evidence put forth by a claimant, *id.* at 834, 123 S.Ct. 1965, there is no "heightened burden of explanation ... when they reject a treating physician's opinion," *id.* at 831, 123 S.Ct. 1965.

In this case, the Fund relied on the determinations of two independent physicians, both of whom examined Demirovic personally. The record shows that the Fund's Appeals Committee had all of Demirovic's medical evidence before it, and reviewed it. It was within the Fund's discretion to credit the opinions of Drs. Toriello and Brown over those of Demirovic's own physicians, and, under the circumstances of this case, we do not think that the Fund was required to offer any further explanation of its decision to do so.

However, the Fund's review of Demirovic's claim suffers from a more fundamental flaw. The Fund's determination that

---

2. We left open the possibility that, in an appropriate case, we might apply arbitrary and capricious review where the insurer had been in "substantial compliance" with the regulations. *Id.* at 109–110.

3. We need not decide here whether Demirovic would have been entitled to deem her claim denied when the Fund failed to make an initial determination within the regulatory timeframe, or whether she was required to pursue her administrative appeal.

Demirovic is *physically* capable of performing some form of sedentary work may be supported by substantial evidence; but the Fund appears to have given no consideration whatsoever to whether Demirovic could in fact find such sedentary work. This is not an abstract concern. Demirovic is in her late fifties; she has worked as an unskilled manual laborer for nearly thirty years; and her facility with the English language is sufficiently limited that she required her son to act as a translator during her examination by Dr. Brown.

The Fund maintains that it is not required to take Demirovic's vocational circumstances into account. The Fund points to the terms of the Plan, which require that determinations of disability be made on the basis of "medical evidence," and that the disability—which must leave the claimant "unable ... to engage in any further employment or gainful pursuit"— be the "result of bodily injury or disease." But this language requires that a determination of disability be based on medical evidence of bodily injury or disease; it does not require that the critical determination of whether the claimant is able to engage in any further gainful employment be made without consideration of a claimant's vocational characteristics, or without consideration of the sort of work that is actually available in the economy. Indeed, without some such consideration, implicit or explicit, it is hard to understand what "unable ... to engage in further employment" might mean. A determination of 'employability' cannot be purely a medical diagnosis.

▆▆▆ In any case, it is the SPD that controls here, and the SPD does not contain the language on which the Fund relies: under the terms of the SPD, "[t]otal and permanent disability is the inability to work in any capacity.... [Y]ou must be unable to perform any gainful employment to be considered totally and permanently disabled under this Plan." This is unquestionably a demanding standard; many more lenient plans require only that a claimant be unable to perform the duties of his or her prior occupation.[4] However, like the language of the Plan itself, the language of the SPD neither expressly requires that the Fund take a claimant's individual vocational circumstances into account when determining her ability to perform "gainful employment," nor expressly forecloses the Fund from doing so. The question before us is whether the SPD's language may reasonably be interpreted— as it appears the Fund interprets it—so strictly as to deny benefits to any claimant who is physically capable, in the abstract, of any kind of work whatsoever, regardless of the claimant's individual vocational circumstances. We hold that it may not.

In doing so, we join the other circuits to have considered the issue. In *Helms v. Monsanto Co., Inc.*, 728 F.2d 1416 (11th Cir.1984), the Eleventh Circuit was faced with a plan containing very similar language to the one at issue here; the claimant was entitled to benefits only if he or she was " 'totally disabled and continues to be totally disabled by reason of bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit.' " *Id.* at 1418. The Eleventh Circuit held that "an absolute and literal interpretation" of that language, according to

---

4. The plan at issue here is an example of a 'general' disability plan, in which a participant is considered able-bodied if she is able to perform any gainful employment, as opposed to an 'occupational' plan, in which a participant is considered able-bodied only if she is able to perform the duties of her particular occupation. *See Helms v. Monsanto Co.*, 728 F.2d 1416, 1419 (11th Cir.1984).

which "the affected individual must be utterly helpless to be considered disabled," could not withstand even deferential review. *Id.* at 1420. The court read the plan's language in light of the Congressional intent underlying ERISA, "that those who participate in the plans actually receive the benefits they are entitled to and do not lose these as a result of unduly restrictive provisions or lack of sufficient funds." *Id.* (citing H.R.Rep. No. 93–807 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4670, 4676–77). In light of this purpose, the court rejected a "strict, literal construction of such a provision which would deny benefits to the disabled if he should engage in some minimal occupation, such as selling peanuts or pencils, which would yield only a pittance." *Id.* at 1421.

In *Torix v. Ball Corp.*, 862 F.2d 1428 (10th Cir.1988), the Tenth Circuit considered a plan which required that the claimant show an inability to pursue " *'any occupation or employment for wages or profit* as a result of bodily injury or disease.' " *Id.* at 1429 n. 1 (emphasis in opinion). The plaintiff in *Torix* argued that the plan's committee had acted arbitrarily and capriciously in determining that he was not totally disabled, without "tak[ing] into account his age, limited educational background, and the unavailability of suitable employment in the area." *Id.* at 1429. The Tenth Circuit—adopting *Helms's* reasoning—agreed, holding that:

> We believe that the policy concerns which underlie ERISA would be severely undermined if we endorsed a literal reading of the plan's terms. Thus we join the reasoning of the Eleventh Circuit and hold that a reasonable interpretation of a claimant's entitlement to payments based on a claim of "total disability" must consider the claimant's

ability to pursue gainful employment in light of all the circumstances.

*Id.* at 1431.

Looking to cases construing similar provisions in private insurance contracts and in the Social Security statutes, *Helms* and *Torix* held that terms such as 'gainful' or 'remunerative' "must [mean] something reasonably substantial rather than a mere nominal profit." *Helms,* 728 F.2d at 1420; *see also Torix,* 862 F.2d at 1431. Both circuits held that the claimant, in order to meet the standard of total disability, must show "physical inability to follow any occupation from which he could earn a reasonably substantial income rising to the dignity of an income or livelihood, even though the income is not as much as he earned before the disability." *Helms,* 728 F.2d at 1421–22 (citing *Mutual Life Ins. Co. v. Bryant,* 296 Ky. 815, 823, 177 S.W.2d 588 (Ky.1943)); *Torix,* 862 F.2d at 1431.

Other circuits have accepted *Helms'* and *Torix's* basic proposition that disability provisions such as the one at issue here cannot be interpreted with undue strictness. *See VanderKlok v. Provident Life and Accident Ins. Co.,* 956 F.2d 610, 614–15 (6th Cir.1992) ("We agree with the courts in *[Helms* and *Torix]* that the phrase 'prevented from engaging in every business or occupation' cannot be construed so narrowly that an individual must be utterly helpless to be considered disabled ...." (citations omitted)); *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan,* 85 F.3d 455, 458 (9th Cir.1996) ("There is little question that the phrase should not be given [a literal] construction, as 'total disability' would only exist if the person were essentially non-conscious."); *Doyle v. Paul Revere Life Ins. Co.,* 144 F.3d 181, 184 (1st Cir.1998) ("We, of course, agree that such 'general' disability provisions should not be construed so literally that an

individual must be utterly helpless to be considered disabled.") (internal quotation marks and citation omitted).

■ We also find the reasoning of *Helms* and *Torix* persuasive. The phrase "any gainful employment" in the context of Demirovic's insurance plan may not reasonably be read as denying benefits to a person who is *physically* capable of any employment whatsoever, so long as it earns a nominal profit. Nor may it be read as allowing an administrator to disregard a claimant's individual vocational circumstances. To do so would "render[ ] the plan's promise of a disability pension hollow for all but the most grievously incapacitated claimants," *Brown v. Bd. of Trustees of the Bldg. Serv. 32B–J Pension Fund,* 392 F.Supp.2d 434, 444 (E.D.N.Y.2005), would deprive plan participants of their reasonable expectations, and is arbitrary and capricious. A finding that a claimant is physically capable of sedentary work is meaningless without some consideration of whether she is vocationally qualified to obtain such employment, and to earn a reasonably substantial income from it, rising to the dignity of an income or livelihood, though not necessarily as much as she earned before the disability. This standard reflects the "most important purpose" of ERISA, which is "to assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society." S.REP. No. 93–127 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4849.

In this case, a proper inquiry would require not only a medical assessment of Demirovic's physical capacity to perform both physical and sedentary work, but also a non-medical assessment as to whether she has the vocational capacity to perform any type of work—of a type that actually exists in the national economy—that permits her to earn a reasonably substantial income from her employment, rising to the dignity of an income or livelihood. Where, as here, the plan is silent on the issue of non-medical vocational characteristics, the nature of this consideration will be within the plan administrators' broad discretion, and may vary from case to case. We do not hold that either plan administrators or claimants must use any particular method to determine a claimant's vocational capacities. However, we must be satisfied that the plan's consideration of the claimant's circumstances is neither arbitrary nor capricious.[5]

We do not expect this to place an unreasonable administrative burden on plan administrators. In the Tenth and Eleventh Circuit, following *Helms* and *Torix,* plans have considered the testimony of rehabilitation consultants hired in connection with state worker's compensation claims, as well as the testimony of Administrative Law Judges taken from social security proceedings. *See, e.g., Harris v. FMC Corp.,* No. 90–751, 1992 U.S. Dist. LEXIS 21023, at *23 (D.Ga. Jan. 23, 1992). Other plans have conducted "transferrable skills analys[es]" using a claimant's "education and former work experience to find occupations that ... involved skills that [he] could transfer from his previous jobs." *Buchanan v. Reliance Std. Life Ins. Co.,* 5 F.Supp.2d 1172, 1185 (D.Kan.1998).

---

5. Because the Fund appears to have declined to give any consideration to Demirovic's vocational circumstances whatsoever, based on an erroneous interpretation of the Plan's provisions, we are not faced with the question of which party should bear the burden of showing that Demirovic's vocational circumstances do or do not render her unable to obtain gainful employment.

Alternatively, plans may, in an appropriate case, choose to rely on the Medical–Vocational Guidelines (the "Grids") used in determining eligibility for Social Security disability benefits. We merely suggest this as one possible method—well-developed, relatively efficient and by no means overly generous to claimants—by which a plan may show adequate consideration of a claimant's vocational characteristics. We do not mean to suggest that a plan would under any circumstances be *bound* by the results of such an analysis, nor that a plan would be subject to any heightened burden of explanation if it decided to deviate from such an analysis. A plan might instead choose to conduct its own inquiry including a more traditional analysis of a claimant's age, training and experience.

The record here, however, shows a complete absence of consideration of Demirovic's vocational circumstances. This record cannot pass muster even under the deferential arbitrary and capricious standard of review, and so we remand the case to allow the Fund to give further consideration to Demirovic's claim of disability, taking into account all of Demirovic's circumstances. In making this determination, the Fund should not only give appropriate consideration to—though it is not necessarily required to credit—the evidence submitted by Demirovic's doctors regarding any physical limitations her condition may place on the types of sedentary work she may be able to perform, but also consider her vocational capacity to perform such work.

### CONCLUSION

For the foregoing reasons, we conclude that the District Court erred in granting summary judgment for the Fund on Demirovic's ERISA claim. We vacate the judgment of the District Court and remand to the District Court with instructions to re-mand the case to the Fund for further proceedings consistent with this opinion.