**ASSOCIATION OF PRIVATE SECTOR COLLEGES AND UNIVERSITIES, Appellant**

**v.**

**Arne DUNCAN, in his Official Capacity as Secretary of the Department of Education, Office of the Secretary, et al., Appellees.**

**No. 15–5190.**

United States Court of Appeals, District of Columbia Circuit.

March 8, 2016.

Jonathan Charles Bond, Douglas R. Cox, Gibson, Dunn & Crutcher LLP,

Washington, DC, Timothy J. Hatch, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, for Appellant.

Joshua Paul Waldman, Michael S. Raab, U.S. Department of Justice, Washington, DC, for Appellees.

Julie Alyssa Murray, Public Citizen Litigation Group, Washington, DC, for Amicus Curiae for Appellee.

Before: GARLAND, Chief Judge, ROGERS, Circuit Judge, and GINSBURG, Senior Circuit Judge.

***JUDGMENT***

PER CURIAM.

This appeal was considered on the record of the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C.CIR. R. 36(d). For the reasons stated below, it is

**ORDERED and ADJUDGED** that the judgment of the district court be affirmed.

The Association of Private Sector Colleges and Universities ("the Association") challenges 2014 regulations promulgated by the Department of Education that define what it means for certain educational programs to provide a "program of training to prepare [their] students for gainful employment in a recognized" occupation or profession. *Program Integrity: Gainful Employment* ("2014 Rule"), 79 Fed.Reg. 64,889, 64,890 (Oct. 31, 2014) (interpreting text in 20 U.S.C. §§ 1002(b)(1)(A)(i), 1002(c)(1)(A), 1088(b)(1)(A)(i)). To determine whether a particular educational program so prepares its students, the Department established a set of metrics intended to measure whether a program's graduates are earning enough money to pay back their student loan debt (hereinafter, the "debt metrics"). *Id.; see also* 34 C.F.R. §§ 668.403–668.406, 668.409–668.410. A program's performance under the debt metrics determines whether its students are eligible for federal student loans under Title IV of the Higher Education Act, Pub.L. No. 89–329, 79 Stat. 1219, 1232–54 (1965) (codified as amended in scattered sections of 20 U.S.C. §§ 1070–1099c–2 and 42 U.S.C. §§ 2751–2756b). 34 C.F.R. § 668.403(c)(4). The debt metrics require certain data about students that schools operating covered educational programs must report to the Department. *Id.* § 668.411.

On cross motions for summary judgment, the district court granted summary judgment to the Department, concluding the Association's statutory challenges failed under *Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and that it failed to meet its burden to show that the Department's 2014 Rule was arbitrary or capricious. *Ass'n of Private Sector Colls. & Univs. v. Duncan* ("*APSCU III*"), 110 F.Supp.3d 176, 184–98 (D.D.C.2015). The district court also granted summary judgment to the Department on the legality of the rule's reporting requirement, as well as its disclosure and certification requirements. *Id.* at 198–204.

On appeal, the Association raises three issues: (1) The Department's interpretation of the Higher Education Act is foreclosed by the text of the statute or, in any event, is an unreasonable interpretation. (2) The debt metrics established by the regulations are arbitrary and capricious. (3) The reporting requirement exceeds the Department's statutory authority and is nonseverable, mandating vacatur of the 2014 Rule. The Association no longer challenges the certification or disclosure provisions. Three district courts have written

persuasively in response to some or all of the Association's contentions, with respect to both the 2014 Rule and the Department's first "gainful employment" rulemaking, in 2011. *See APSCU III,* 110 F.Supp.3d 176; *Ass'n of Proprietary Colls. v. Duncan,* 107 F.Supp.3d 332 (S.D.N.Y 2015) (2014 Rule); *Ass'n of Private Sector Colls. & Univs. v. Duncan ("APSCU II"),* 930 F.Supp.2d 210 (D.D.C.2013) (vacating 2011 rule reporting requirement); *Ass'n of Private Sector Colls. & Univs. v. Duncan ("APSCU I"),* 870 F.Supp.2d 133 (D.D.C. 2012) (vacating 2011 rule debt metrics). This court addressed Department regulations promulgated pursuant to different Title IV requirements in *Association of Private Sector Colleges and Universities v. Duncan ("APSCU"),* 681 F.3d 427 (D.C.Cir.2012). We take due guidance from these sources, as did the district court in *APSCU III,* 110 F.Supp.3d at 185, 190–94, 198. Upon *de novo* review, *see APSCU,* 681 F.3d at 440–41, we affirm as follows.

At the center of the Association's challenge is the Department's interpretation of Title IV's requirement that, for their students to be eligible for federal financial aid under that title, certain types of educational programs must provide a "program of training to prepare students for gainful employment in a recognized" occupation or profession. 20 U.S.C. §§ 1002(b)(1)(A)(i), 1002(c)(1)(A), 1088(b)(1)(A)(i). The Department has interpreted this undefined, ambiguous clause to require that "programs provide quality education and training to their students that lead to earnings that will allow students to pay back their student loan debts." 2014 Rule, 79 Fed. Reg. at 64,890. The Association contends the issue is resolved at step one of the analysis in *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778, because the "gainful employment" provisions require only that students be trained for paying jobs.

The district court's analysis rejected as erroneous the Association's contention and held that the Department's interpretation of the "gainful employment" provisions warrants *Chevron* deference, *APSCU III,* 110 F.Supp.3d at 184–90, emphasizing that "the Department's interpretation is rooted in the text ...," *id.* at 186. We agree, and we briefly elaborate on the district court's application of the first step of the *Chevron* analysis, 467 U.S. at 842–43, 104 S.Ct. 2778, to offer an additional observation in support of its conclusion. The district court focused principally on the meaning of the words "gainful" and "employment" separately. *APSCU III,* 110 F.Supp.3d at 185. The phrase "gainful employment" appears, however, in many federal statutes and means different things in different contexts. *See, e.g.,* 16 U.S.C. § 1701 (referring to employment of children 15–18 years of age for up to 90 days per year in Youth Conservation Corps); 20 U.S.C. § 1134c(a) (prohibiting certain federal fellowship recipients from engaging in "gainful employment" during fellowship); 26 U.S.C. § 21 (establishing tax credit to offset household and dependent care expenses necessary for "gainful employment"); *Helms v. Monsanto Co.,* 728 F.2d 1416, 1421–22 (11th Cir.1984) (characterizing "gainful employment" in employee disability benefits case as a job where the employee "could earn a reasonably substantial income rising to the dignity of an income or livelihood"). This underscores the district court's conclusion that the phrase "gainful employment" does not unambiguously mean what the Association says it means.

Similarly, under step two of the *Chevron* analysis, 467 U.S. at 843, 104 S.Ct. 2778, there are reasons in addition to those offered by the district court to conclude that

the Department's interpretation is reasonable. The educational programs at issue must "train[ ]" students to "prepare" them for "gainful employment." *See* 20 U.S.C. §§ 1002(b)(1)(A)(i), 1002(c)(1)(A), 1088(b)(1)(A)(i). Those verbs suggest elevation to something more than just any paying job. They suggest jobs that students would less likely be able to obtain without that training and preparation. The adjectives chosen by Congress are likewise illuminating. The training is not just for employment in any job; it is for "gainful" employment in a "recognized" profession or occupation. *See id.* Statutory context further supports the Department's interpretation. The conditions attached to Title IV funds "are intended to ensure that participating schools actually prepare their students for employment, such that those students can repay their loans." *APSCU,* 681 F.3d at 433–34. The financial aid at issue is, after all, a "loan," not a scholarship, grant, or award. It would be strange for Congress to loan out money to train students for jobs that were insufficiently remunerative to permit the students to repay their loans. And it would be a perverse system that, by design, wasted taxpayer money in order to impose crippling, credit-destroying debt on lower-income students and graduates. Had Congress been uninterested in whether the loan-funded training would result in a job that paid enough to satisfy loan debt, it would have created a federal grant system instead of a federal loan system focusing on preparation for gainful employment.

The district court has persuasively examined the other issues raised on appeal by the Association. For the reasons given by the district court, we find the Association's arbitrary-and-capricious challenges to the 2014 Rule unconvincing. *See APSCU III,* 110 F.Supp.3d at 190–96. The rulemaking record repeatedly demonstrates that neither the 2014 Rule nor the Department's rulemaking process was arbitrary or capricious. Instead, the Department addressed the subjects of concern to the Association and, upon returning to drafting after the vacatur of its 2011 rule, conducted analyses that led it "not [to] agree" with or to find "no evidence" to support the concerns identified by the Association. *See, e.g.,* 2014 Rule, 79 Fed.Reg. at 64,910 (no disproportionate impact on particular demographic categories of students), 64,931 (training for jobs with lower pay or delayed benefit not "problematic as a class"). In fact, at times the Department's responses to the Association's concerns underscore the reasonableness of its approach. *See, e.g.,* 2014 Rule, 79 Fed.Reg. at 64,920–21 (structure of debt metrics accounts for effect of atypical cohort or labor market conditions on program outcome), 64,957–58 (use of Social Security data for earnings figures). The district court properly rejected these challenges. *APSCU III,* 110 F.Supp.3d at 190–96.

Lastly, the district court's analysis rejecting the Association's challenge to the reporting requirement is persuasive. *Id.* at 201–02. The Association's reliance on 20 U.S.C. § 1015c is meritless. The 2014 Rule incorporates information reported to the Department into the pre-existing National Student Loan Data System (the "Data System"). 2014 Rule, 79 Fed.Reg. at 64,975–76. As the district court correctly observed, *APSCU III,* 110 F.Supp.3d at 201, the Data System falls within the exception to § 1015c's prohibition on certain types of federal education databases, *see* 20 U.S.C. § 1015c(b). That was true before the promulgation of the 2014 Rule, and it remains true after its promulgation. Unlike the reporting requirement invalidated in *APSCU II,* 930 F.Supp.2d at 218–21, the 2014 Rule's reporting requirement is limited to information about students

who receive Title IV funds, 34 C.F.R. § 668.411(a)(1). The Data System has long collected data similar to the private-loan data educational institutions must report under the 2014 Rule. *See APSCU III,* 110 F.Supp.3d at 202. Nothing the Association has urged on appeal demonstrates error in the district court's statutory analysis.

Accordingly, for these reasons, we adopt the district court's analysis, *see APSCU III,* 110 F.Supp.3d at 184–90 (statutory authority), 190–96 (arbitrary-and-capricious review), 201–02 (reporting requirement), and affirm the grant of summary judgment to the Department.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en Banc. See* FED. R.APP. P. 41(b); D.C.CIR. R. 41.